#### IN THE

## SUPERIOR COURT OF JUDICATURE.

#### FOR THE

## COUNTY OF MERRIMACK, AUGUST TERM,

### A. D. 1828.

---

### JOHN GREENOUGH *versus* BENJAMIN ROLFE and E. MOODY.

If, under an unqualified submission, referees take upon themselves the whole responsibility, and decide a question of law, otherwise than the court would have done ; or, if in such a case, knowing what the law is, they choose to disregard it, and decide according to what they consider the equity and good conscience of the case, the parties are bound by the decision.

So if a distinct question of law is referred, under circumstances that show an intention in the parties that the law of the referees shall be the law of the case, the parties will be bound by the decision, however erroneous.

An erroneous judgment of the referees, when their judgment has been fairly exercised, is not alone, a sufficient ground to set aside an award.

But when referees, intending to decide according to law, mistake the law, this is a good objection to the award.

It will be presumed, that referees intended to decide according to law, where it was agreed by the parties that they should decide according to the law and justice of the case.

ASSUMPSIT upon a note for $150, dated January 18, 1822, made by the defendants, and payable to the plaintiff in one year with interest.

The cause had been submitted to referees, under a rule of this court ; and it had been agreed between the parties, that the referees should decide the cause upon

just and legal grounds, and that at the hearing, the testimony of the parties themselves should be admitted. After hearing the parties, the referees made a report in favor of the plaintiff, which the defendants moved the court to set aside on the ground, that it was against both the law and justice of the cause.

*Nesmith* and *Moody Kent*, for the plaintiff.

*Webster*, for the defendants.

RICHARDSON, C. J. delivered the opinion of the court.

The referees, who were chosen by the parties to decide this cause, having made a report in favor of the plaintiff, the defendants now move the court to set that report aside ; and the question to be decided, is, whether any legal ground is shown, on which the motion can be sustained ?

The defendants contend, that by the agreement of the parties, the cause was to be decided upon just and legal grounds ; or in other words, according to law ; that the referees must, therefore, be presumed to have intended so to decide ; that they have wholly mistaken the law of the case, and that their decision is not, therefore, what they themselves intended it should be, and ought not to stand.

It seems to be well settled, that, under an unqualified submission, if the referees take upon themselves the whole responsibility, and decide a question of law otherwise than the court would have done, this is no good reason for setting aside the report. So if, in such a case, knowing what the law is, the referees choose to disregard it, and decide according to what they think to be the equity and good conscience of the case, the report is not, for this cause, to be rejected. And when a distinct question of law, and nothing else, is referred, under such circumstances, as to show that the intention of the parties was, that the law of the referees should be the law of the case, the parties are bound by the decision, however erroneous, provided it be fairly made.

Nor is a report to be set aside, on the simple ground of an erroneous judgment of the referees, when their judgment has been fairly exercised upon the matter submitted to them. For the parties having agreed to abide the decision, which the impartial judgment of the referees may pronounce, the decision, when fairly made, must, however erroneous, be conclusive. But when referees, intending to decide according to law, mistake the law, this is a good reason why the court should interfere and correct the mistake. Because, in such a case, the award is not what the referees intended it should be.

When referees have made a mistake, of which they themselves are sensible, upon proof of this we usually send the report back to them for correction.

These principles seem to be sanctioned by many adjudged cases. 1 Johns. Ch. C. 101 *Herrick* v. *Blair* ; ibid, 220, *Roosevelt* v. *Thurman* ; 9 Vesey, 364, *Young* v. *Walter* ; Caldwell, 52—66 ; 1 Vesey, Jr. 365, *Price* v. *Williams* ; ibid, 369, *Knox* v. *Symonds* ; 1 Taunt. 48, *Delver* v. *Barnes* ; 6 ditto, 251, *Wahlenberg* v. *Lageman* ; 1 Swans. 55 ; 2 Johns. Ch. C. 551, and 361 ; 2 Vesey, Jr. 15, *Morgan* v. *Mather* ; 18 Vesey, 447, *Anderson* v. *Darcy* ; 6 ditto, 282, *Ching* v. *Ching* ; Kyd, 351 ; 13 East, 357, *Chase* v. *Westmore* ; 3 East, 18, *Kent* v. *Estob* ; 1 M. & S. 106, *Price* v. *Hollis* ; 2 B. & A. 691 ; 3 ditto, 237 ; 2 Gallison, 61, *Kleine* v. *Catara*.

In this case, the referees were, by the agreement of the parties, as we understand it, restricted to decide ac-according to law. We must therefore presume that they intended to make the law their guide ; and if they have mistaken the law, this will be a good reason, why the report should not be accepted.

It therefore becomes necessary to examine the facts of the case, as they are exhibited in the papers and affidavits, which have been laid before us, and compare those facts with the law.

On the 1st December, 1821, Rolfe conveyed his farm to Greenough in fee and in mortgage, with a condition

that Rolfe should pay two notes dated December 1, 1821, amounting together to $423, payable to one Gerish and signed by Rolfe as principal, and Greenough as surety, and should save Greenough harmless.

On the 30th March, 1822, Rolfe made another mortgage of the same farm to Greenough, to secure the payment of a note of that date for $150, made by Rolfe, and payable to Greenough ; and also to secure the payment of the note on which this suit is founded, and which was given for a debt due from Moody to Greenough, and was signed by Rolfe as a surety.

In the course of the year 1823, Rolfe become indebted to Moody for labor, in the sum of $108, and December, that year, it was agreed between them that Rolfe should pay that sum to Greenough upon this note.

On the 10th January, 1824, Rolfe conveyed the farm, which had been conveyed as aforesaid to Greenough, to Samuel Greeley, in fee and in mortgage, to secure the payment of a note dated January 1, 1824, for $500.

On the 14th January, 1824, Moody paid upon this note two years' interest and $28,46,of the principle, to Greenough ; and on the 20th March, in the same year, he paid to the same a further sum of $12, and on the 17th December, 1824, $2 more. Thus the whole amount of this note which remained unpaid, became the proper debt of Rolfe, he having agreed with Moody to pay it as aforesaid.

On the 26th July, 1824, Rolfe released to Greeley all his right in the farm.

Rolfe says, in his affidavit, that Greeley agreed to pay all Greenough's demands, including the note now in suit, and account with him for what he could obtain for the farm above the sum thus agreed to be paid to Greenough ; and that this agreement was the consideration on which he released to Greeley all his right in the farm. He further says that Greeley was informed that this note had become the proper debt of Rolfe, and must be paid, and that Greeley agreed to pay it ; and that before Greeley

took the release he went with Rolfe to Greenough, who stated to Greeley the whole amount due including this note.

Greenough says, in his affidavit, that Greeley called upon him to ascertain the amount of his claim against Rolfe, that he told him the amount, as near as he could without making a cast of the interest, and included this note, in the amount stated.

Greeley in his affidavit, says, that Greenough, when application was made to him to ascertain the amount of his claim stated it to be $600 , that he, Greeley, did not know that he should have to pay much, if any more than $600, to Greenough ; that he had no knowledge of the second mortgage ; that the other mortgage and the notes against Rolfe were considered when he took the quit claim from Rolfe, and he expected to pay those to Greenough, and no more, and that between him and Rolfe, the amount secured by the first mortgage was considered as cancelled.

What is the amount of this evidence, when taken altogether ? Rolfe says, that Greeley agreed to pay to Greenough this note. What does Greeley say to this ? —In order to understand Greeley's statement, it is necessary to understand the state of his information on this subject at the time he took the release. It is evident, he had never seen the mortgage, and had no particular information, whether there was one mortgage or more.

It is evident, that the agreement between him and Rolfe, was not confined to the first mortgage in particular, for Greeley admits, that he expected to pay $600, whereas the first mortgage, at that time, amounted to less than $500, What, then, does Greeley mean, when, after saying that he had no notice of the second mortgage, he testifies that the other mortgage was considered, when he took the quitclaim, and the amount of the first mortgage considered as cancelled ? He cannot be understood to mean, that the first mortgage in particular, was considered, for it is evident, he had no more knowledge of the first mortgage than of the second. What then did

he mean ? The only meaning he could have had, if he intended to tell the truth, and be consistent in his statement, was, that he supposed that there was only one mortgage, that the notes secured by that were considered, and the amount considered as cancelled. If Greeley is to be thus understood, there is no substantial difference between his statement and that of Rolfe. The circumstance that Greeley supposed there was only one mortgage, was wholly immaterial. The amount due to Greenough, was the material circumstance, and of that Greeley was informed ; and that amount was to be paid by Greeley, and to be considered as cancelled between Rolfe and Greeley.

The contract, then, under which Greeley took the quit-claim, was, that he should sell the farm, pay the amount due to Greenough, and account with Rolfe for the balance.

On the 21st December, 1824, Greeley paid the whole amount due to Greenough, and took an assignment of Greenough's two mortgages, and of the notes ; and he now brings this action in Greenough's name, to recover of these defendants the amount of one of the notes thus paid.

The circumstances which have induced Greeley to bring this suit, are these. He sold the farm for $1100. He has paid Greenough, to redeem the land, about $700, and the remainder of the money which he received for the farm is insufficient to pay the debt due from Rolfe to himself. And as Rolfe is now insolvent, Greeley will lose in the transaction, the amount of this note, unless he can recover it of Moody. The real question in this case, is, therefore, who shall lose the amount of this note, Greeley or Moody.

We shall, in the first place, consider how the case stands upon the admitted facts, independently of the testimony of Rolfe and Greeley.

The land was first mortgaged by Rolfe to Greenough. It was then mortgaged to Greeley. When Greeley took a release of Rolfe's right to redeem, as between them,

Greeley became seized of an absolute estate in fee simple, and *prima facie*, the debt due from Rolfe to Greeley must be considered as extinguished. So when Greeley took an assignment of Greenough's mortgages, the estate of the mortgagor and of the mortgagee uniting in him *prima facie*, the notes secured by those mortgages must be considered as extinguished. This principle is a well settled rule of law. 2 N. H. Rep. 300, *Eaton* v. *George*; 3 N. H. Rep. 294 *Taylor* v. *Bassett*; 3 Vesey 339, *Selby* v. *Alston*; ibid, 120, *Brydges* v. *Brydges*; 3 Johns. Ch. R. 53, *Gardner* v. *Astor*; 1 ditto, 417, *Nicholson* v. *Halsay*; 7 Johns. R. 278, *Collins* v. *Terrey*; 1 Cowen, 460, *Coates* v. *Cheever*; 18 Vesey 384; 3 Johns. Ch. R. 53.

Independently, then, of the testimony of Greeley and Rolfe, no ground either legal or equitable appears, on which this suit can be maintained. The presumption is, that when Greeley paid to Greenough the amount due to the latter, he paid it to redeem his own land, and had the full benefit of the payment in the possession of the land free from that incumbrance.

But the testimony of Rolfe and Greeley relieves the plaintiff from this difficulty. It was not Greeley's object to buy the right of Rolfe in equity, to redeem the land. But that right was conveyed to him, to enable him to dispose of the land, and with the proceeds pay Greenough, and account with Rolfe for the rest of the money. Such being the case, the note given by Rolfe to Greeley ought not to be considered as extinguished. For that could not have been the understanding of the parties. Greeley took the equity of redemption in order to enable him to sell the land. He took it to sell as the agent of Rolfe, and not in satisfaction of his debt. It would therefore, be unjust to hold, that in such a case the union of the estates of the mortgagor and the mortgagee extinguishes the debt.

But if Greeley took the quitclaim as the agent of Rolfe, and under a contract that he should sell the land, pay the amount due to Greenough, and account with Rolfe

for the balance, then the question arises, whether in relation to this suit, Greeley is placed by this view of the case on any better ground than he would have been without this testimony.

We shall first consider, how the case stands in this light between Greeley and Rolfe. Greeley has paid Greenough, and taken an assignment of the notes. But how has he paid this? This view of the case supposes that he paid it with funds furnished by Rolfe; he has sold Rolfe's land, and out of the proceeds, as Rolfe's agent, paid Greenough. This debt then has in reality been paid by Rolfe. What pretence then can there be, that Greeley can, in a suit in Greenough's name, on any just and legal principles, recover of Rolfe the contents of this note? Rolfe may be liable to pay Greeley the balance due on the note which Greeley holds against him. But he has paid this note and cannot by law be compelled to pay it again.

But in the next place, how stands the case on the evidence between Greeley and Moody? Although Moody was originally the principal, yet having paid to Rolfe the amount now claimed to be due upon the note, he must, at this time be considered as a surety. And if the debt has been paid by the principal, it is clear, that the surety is discharged.

There is then so far as appears from the evidence in the case, no ground whatever, on which this action can be sustained. The plaintiff has neither law nor equity on his side.

We have looked into the affidavits of the referees to ascertain the ground on which they decided. It appears that the evidence before them was the same which has been laid before us. They all state it as their opinion, that it is just that the plaintiff should recover, and two of them state, as the ground of their opinion, that they could not see that " either of the defendants have ever furnished Greeley or Greenough one cent towards the payment" of the sum sought to be recovered in this case.

It is no matter of surprise that the referees should have come to the conclusion they did. They were not lawyers, nor accustomed to the investigations which were required to understand clearly, and decide correctly, the questions which the case presented.

Although when plainly stated and explained, the cause seems to be free from all doubt, yet we have found it required a very careful examination to collect the real case from the mass of evidence, and to state and explain it.

It is, we confess, matter of surprise that a case of this kind should have been submitted under such restrictions as were imposed upon the referees, to men who do not belong to the profession. It was unreasonable to expect that they would be able to investigate and apply correctly, the legal principles which must govern the case. It is certain that the referees totally misapprehended the nature of the case. They say that they decided in favor of the plaintiff because they could not see that either of the defendants had paid to Greeley a cent, to discharge the sum which Greely claims to recover.

Yet it was not disputed before the referees that Rolfe had made a conveyance to Greeley of a farm, which Greeley had sold for $1100, and it was clear, from the evidence, that if that conveyance was not made under such circumstances as to discharge this note when Greeley took a conveyance from Greenough, it was made under a contract that Greeley should pay this note out of the proceeds of the sale of the farm. And it was not disputed that Greeley had paid it.

Whatever view is taken of this case, this note must, in law, be considered as discharged. As the referees were bound by the agreement of the parties to decide according to law, they must be presumed to have intended so to decide, and as they have mistaken the law of the case, their report is not what they intended it to be, and cannot be accepted. *Report set aside.*