## BEAN *v.* WENDELL.

Where referees have made up their judgment upon a general view of what seems to them just and equitable between the parties, their award will not be set aside because they have failed, specifically, to allow an admitted item in the claim of one party.

IN EQUITY. The bill states that an action was pending April 21, 1338, brought by D. Wendell, against the complainant, for breaking and entering her close in Lyman, and cutting and carrying away her timber trees. D. Wendell died, and A. Wendell her executor, prosecuted the suit. Bean, to end the controversy, then proposed to Wendell's attorneys to purchase the land, and an agreement was made, in pursuance of which he gave the attorneys his note for $38, and interest, for the cost of the suit, and three notes to Wendell amounting to $200. The agreement was written, and stated that Bean had given a note for $38 for costs of the suit, and three notes to Wendell amounting to $200, to pay for forty acres of land described, upon certain terms set forth, but not material in this case. The land agreed for joined Bean's land, and the suit depended upon the running of the unsettled division line between them. Bean paid

his notes, and demanded a deed, which was not made. In March, 1846, the money paid upon the three notes was repaid to Bean upon his demand, by the attorneys, according to the agreement. On the 27th of November, 1846, Wendell and Bean agreed to submit all matters in dispute between them, relating to this land, and the action of Wendell against Bean, to the award of E. Carlton, D. G. Goodall, and G. Cummings. The parties were heard after due notice, on the 27th of April, 1847. Wendell claimed that Bean was bound to take and pay for the land; but if not, he claimed the value of the timber taken from the land before and after the agreement of April 21, 1838. Bean denied his liability to take the land, but expected the arbitrators would allow Wendell for the timber. He claimed the costs paid by him in the action of trespass, $38 and interest, which he alleged was part of the price he was to pay for the land; because it proved, on survey, that the place of the alleged trespass was his own land. Bean was proceeding to introduce evidence that the place of the alleged trespass was his own land, when Wendell interfered, by his counsel, and conceded, that if the arbitrators should find that Wendell was not entitled, in consequence of his neglect to convey, to require Bean to take and pay for said land, the arbitrators should, without proof, allow Bean those costs; and Bean, in consequence, offered no further evidence on that point. The arbitrators awarded, May 1, 1847, that Wendell should recover sixty dollars on account of timber cut by Bean after April, 1838, and costs, $69.42; and they decided that Wendell was not entitled to require Bean to take the land. And yet, the arbitrators, " by accident or mistake, and contrary to the express concession and agreement of the parties, did not award or allow any thing to Bean on account of the costs of the trespass suit; and Wendell has brought an action on the award, which is still pending. The prayer of the bill is, that the award may be set aside, for general relief, and for an injunction against the action.

The answer admits, that it was conceded, on the hearing, that if the arbitrators should find nothing due from Bean, they should award him the costs of the trespass suit; but denies the conces-

sion was made as stated in the bill, according to his best information and belief, not being present in person. It denies that the defendant knows, or has any means of knowing, or any information, or any belief, that the arbitrators did or did not find the defendant entitled to require Bean to complete his purchase, except by inference, from which he thinks, they held he was entitled, &c., or whether the arbitrators allowed the trespass costs to Bean or not, but thinks it probable they did, because they allowed him, the defendant, so little.

The testimony, so far as it bears upon these contested points, was substantially as follows :

E. Carlton, one of the arbitrators, says, " the defendant's counsel admitted, that if Wendell was not entitled to a specific performance of the contract on the part of Bean, the note given by Bean for costs might follow the other notes ; that is, if Wendell was not entitled to recover under the contract, the note for costs might be regarded in the same light as the others.

The arbitrators concluded, that Wendell was not entitled to require Bean to take and pay for the land.

The note for costs and the interest was not allowed to Bean by the arbitrators. They took them into consideration, and disallowed them on the general ground of equity between the parties. That was the ground we intended to take in the whole matter, after determining that Bean was not bound to take a deed of the land.

From the best data we had, we considered what would have been the value of the land with the timber on it, and from that deducted its value, as it then was, without the timber, and from the balance deducted what we allowed Bean on his claim, and the balance then remaining we allowed Wendell on the award. This was substantially the course adopted. We took into consideration the price fixed by the parties, and in our opinion, it was too high ; and we fixed on a price less than that, though I do not remember what it was."

G. Cummings, one of the arbitrators, says, " Wendell's counsel said, among other things, that if the arbitrators did not find that Wendell was entitled to a particular or specific performance

of the bargain as made between them, then, or in that case, he would admit, or the arbitrators might admit, this particular item of Bean's account. If the arbitrators did not find that Wendell was entitled to a specific performance, then they might consider this item as admitted. The construction I put upon the language of the counsel was, that it should not be properly considered, in the nature of an agreement for his client, but simply a strong expression of confidence in the positions assumed throughout the examination.

The arbitrators found that Bean was not bound to take or pay for the land.

"All, or nearly all, we awarded against Bean, was for timber taken from the land, and appropriated by Bean. It was allowed upon the ground of equity.

The items of Bean's account were considered, the $38 with the rest; think we came to the conclusion it ought not to be allowed."

D. G. Goodall, one of the arbitrators says, " my recollection of the counsel's admission is, that if Wendell did not prevail on his claim against Bean, and we gave Bean the case, we might also give Bean those items he claimed in the old trespass suit. We, in the first place, passed upon Bean's obligation to take the deed on the contract. Messrs. Colton and Cummings thought that Bean was not obliged to take the deed. I differed from them ; we argued the point somewhat. I then suggested, that if we could arrive at the same result pecuniarily, it would answer the same purpose. Upon the trespass suit, we decided immediately and unanimously, that Bean could not make Wendell chargeable for that. We considered each item by itself. Our greatest trouble was in getting the amount of damage Wendell had sustained by the removal of the timber. We had not much proof of the amount or value of timber he had taken off. We finally took Wendell's valuation of the land, as he had offered to sell it, as about the original value. We then estimated the present value, calling the difference by removal of the timber, and charging Bean that difference. I was dissatisfied with the amount of damages, and consented to a reduction from my

own private opinion, only upon the principle that it would be better for both parties to have it closed."

Joseph Palmer, who is a brother-in-law of Bean, says, " it was conceded by Wendell's counsel, that if the arbitrators should find that Wendell was not entitled to enforce a deed upon Bean, and compel him to receive it, and pay the consideration, they should award to Bean the amount paid for costs of D. Wendell's action."

A. Livermore, counsel for Wendell, says, " I have but a faint recollection of the discussion on the admission of testimony affecting the old action of trespass, and of making any admission ; but I am very sure I did not make the admission stated in the bill ; " (for reasons stated.)

Henry A. Bellows, counsel for Bean, says, " the counsel for Wendell conceded, that if the arbitrators should find that Wendell was not entitled to require Bean to take and pay for the land, they should allow Bean for the cost of said [trespass] suit. Upon this concession being made, the examination of witnesses upon that point was suspended, and no further evidence offered upon it, relying fully, as I did, upon the aforesaid agreement."

*H. A. Bellows*, for the plaintiff.

*A. Livermore*, for the defendant.

BELL, J. Of the facts in controversy, there can be no doubt that the referees found against Wendell's right to claim performance of Bean's contract, and that they did not allow to Bean the amount of costs paid by him in the trespass suit. It is clear, that some concession was made as to the right to recover those costs, in consequence of which no further evidence on the right to those costs was offered. The precise character of the admission is left in some doubt by the evidence. The witnesses recollect it differently ; they probably understood it differently. But we think there is a decided preponderance in favor of the admission, as set forth in the bill. Upon this view of the evidence, the only question is as to the law arising on those facts.

Here is no mistake of the arbitrators to bring the case within the principle of *Rand* v. *Redington*, 13 N. H. Rep. 72; nor any refusal to hear evidence, since what is contended is, that the parties agreed to omit the evidence upon the concession made by the plaintiff.

No intentional misconduct is imputed to the referees, and none appears. It is shown that the referees did, in fact, consider the item and disallowed it; not upon any real or imagined defect of proof, but upon their view of the equities existing between the parties. This subject of the reference was substantially a single transaction, though consisting of several parts. The referees, it appears, considered these matters and awarded a sum as the balance of the conflicting claims to one of the parties. They differed in their views, as to some of the questions presented, and arrived at their results by different processes. When the referees have thus arrived at a conclusion upon the view taken by each, of the general equities of the case, and have fixed a balance upon a compromise of opinions, it becomes entirely immaterial what claims, among those presented, were considered, as allowed or disallowed; since, with this conclusion in their mind, if they had desired to avoid the difficulty which has occurred in this case, and had allowed this claim for costs, it would only have been balanced by some other claim or equity, which might be allowed as a set-off. If the arbitrators had allowed or disallowed the claims, severally, on the one side, or on the other, and made their award the balance of those allowances, the omission of an admitted claim, by accident, or mistake, or fraudulent design, would be a good reason to object to the award. But here, it appears, that the award was the result of a compromise of differing opinions among the arbitrators, and of a mere jumping at conclusions; perhaps the best method, in the absence " of much proof of the amount or value of the timber taken off," of settling the controversy, that the case admitted of. When referees say, that they estimated the claim on one side by fixing a value on the land and timber in its original state, taking a different value from the price fixed by the parties in a contract of sale, and then finding a present value by the same loose

way of estimation, and making the difference of the estimates the allowed claim of one party, no Court would set aside their award, if they arrived at their results on the other side by a process equally loose. It is perfectly apparent, that by any inquiry as to the steps by which they reached their results, if such an inquiry were allowable, no light can be gained beyond this, that they endeavored to make an award, which would, as they judged, do substantial justice between the parties.

If arbitrators are guilty of fraud or any intentional wrong, or if they fall into any mistake or error, injurious to the parties, their judgments may be inquired into; but it is no objection to a report, that they have arrived at a result, upon a general view of what seems to them just and equitable between the parties, without a detailed examination or discussion of particulars. A report is not to be set aside on the simple ground of an erroneous judgment of the referees, when their judgment has been fairly exercised upon the matter submitted to them. For the parties having agreed to abide the decisions which the impartial judgment of the referees may pronounce, the decision, when fairly made, though erroneous, must be conclusive. *Greenough* v. *Rolfe*, 4 N. H. Rep. 359.

