McKean, Chief Justice.
 

 There are four species of awards: first, those made by mutual consent, in pursuance of arbitration bonds entered into out of court; secondly, those which are made in a cause depending in a court of law or equity, upon the consent of the parties to refer the matter in variance (which are awards at common law); thirdly, those which are made under a rule of court, by virtue of the statute of 9 & 10
 
 Wm. III., c.
 
 15, which was calculated to remedy the delay and circuity of action attendant upon awards made merely in pursuance of arbitration bonds, without the intervention of a controlling power, to compel the acquiescence of the parties. These are the only awards in use at this day, in England; but the legislature of Pennsylvania, in the year 1705, introduced another species here, which are, fourthly, those awards or reports that are made in pursuance of the act of
 
 *330
 
 assembly, setting forth, that
 
 “
 
 where the plaintiff and defendant consent to a rule of court for referring the adjustment of their accounts to certain persons mutually chosen by them in open court, the award or report of such referees, being made according to the submission of the parties, and approved by the court, and entered upon the record or roll, shall have the same effect, and be as available in law, as a verdict by twelve men.” (Act of 1705, 1 Sm. Laws, 50.)
 
 (a)
 

 This act differs essentially from the statute of
 
 Win. III.,
 
 in many respects, but particularly, that to render a report or award, valid and effectual, the former requires, that it be approved by the court; but no such provision is made by the latter, and therefore, awards under rules of court, are # _ conclusive in England, unless some corruption *or other misbehavior 1 -* in the arbitrators is proved. The courts of equity, indeed, have taken a wider ground, and wherever a plain error appears, either in matter of fact or law, it seems, they will make it an object of inquiry (2 Vern. 705; 1 Id. 157; 3 Atk. 494). From some expressions in the authority, we might presume, that the error must be apparent on the award; but as the chancellor, at the same time, speaks generally, that it must be set forth in the bill for relief, there is, at least, great room to doubt upon the subject.
 

 In Pennsylvania, however, since the revolution, as the approbation of the court is made a necessary ingredient in the confirmation of reports, we have thought it our duty, from time to time, to inquire into the allegations against them, before we gave them our sanction. But, in doing this, we have always confined ourselves to two points : 1st, Whether there is an evident mistake in matter of fact: or 2d, Whether the referees have clearly erred in matter of law.
 
 (b)
 
 If either of these is satisfactorily proved, the argument is, surely, as strong for setting a report aside, as where injustice has been done by the corruption or other misconduct of the referees.
 

 Is it not reasonable, indeed, that the same cause which would induce us to set aside a verdict, and grant a new trial, should be sufficient for vacating an award ? In the one case, the decision is made by twelve men, upon oath, with all the information which the judges, and learned counsel can communicate — in the other, it is the act of three persons, who are not sworn to the faithful discharge of their duty, and who are unassisted, either m ascertaining the law, or in developing the fact, upon which the question submitted to them may depend. This abundantly shows that the sacredness of awards ought not to be extended beyond that of verdicts ; and must justify the court in putting them upon the same footing, when errors are suggested, either in clear points of law or fact.
 

 If, therefore, we would have granted a new trial, had the present excep tions been made to a verdict, we ought, for the same reasons, to set aside the report"in question.
 

 Let us, then, consider the case upon its merits. The evidence has failed in establishing the first and second exceptions, which relate to the misconduct
 
 *331
 
 of the referees ; and with respect to the fourth and fifth, though the court incline to think that the arguments are in favor of the defendant, yet we do not find it necessary to give any opinion upon these, as we have no doubt, that, for the third and sixth reasons, the report ought to be set aside.
 

 For the
 
 plaintiff,
 

 were cited: 5 Bac. 250; 1 Id. 134; 2 Burr. 701; Salk. 71, 73; 3 Burr. 1259; 2 Vern. 705; 1 Id. 157; Bull. N. P. 179, 180; 8 Vin. 61; 1 Atk. 67; 2 Vern. 706; 3 P. Wms. 25, 408; 3 Atk. 509.
 

 For the
 
 defendant,
 

 were cited: 2 Vern. 515; 1 Atk. 64; 2 Vern. 705; 3 Atk. 494; 3 Burr. 1259; 5 Id. 2729; 1 Ld. Raym. 271; 12 Vin. 25, pl. 35; Cowp. 445; Doug. 627; 1 Show. 173; 1 Salk. 392; Gilb. L. Ev. 4, 5, 16, 17.
 

 Thus, under the third exception, it has been proved by the statement exhibited by the referees, that interest was allowed to the plaintiff upon an unliquidated account; which is contrary to the general rule of law, as well as to the repeated decisions of this court. There are only three cases .in which interest can be allowed upon an open account: 1st, where it is payable by the express agreement of the parties : 2d, where it is payable by a general usage, as in the trade between England and America, to which (with *an exception during the continuance of the late war) we have uni- *- formly acceded : and 3d, where there has been a vexatious and unreasonable delay in making payment, which will induce the court to direct, and the jury to grant, an adequate compensation, under the name of damages, for which the rate of interest is generally made the rule of computation. The doctrine upon this subject was fully discussed and determined in
 
 Henry
 
 v.
 
 Risk et al., ante,
 
 265.
 
 (a)
 
 We think it establishes a just and useful principle, which tends equally to promote credit, and to prevent feuds and litigations. In transgressing this principle, the referees have mistaken a clear point of law, which would alone be sufficient for setting aside their report.
 

 But besides this, we find by the evidence, under the sixth exception, that they have also allowed the charge of premium and commission for making an insurance, without requiring the policy to be produced, or any proof of its being lost; which is the only evidence that, in such cases, can be admitted in any court, either of civil or common-law jurisdiction. It is, indeed, a fundamental maxim in the laws of evidence (wisely framed for the prevention of frauds), that the best proof, of which the fact reasonably admits,, ought to be given. This has not been complied with on the present occasion; and the referees, in overlooking it, have violated another plain principle of law.
 

 Upon the whole, as our decision against the plaintiff can produce no material injury, but if against the defendant, would for ever preclude him from a chance of justice, the Court unanimously direct—
 

 That the report be set aside.
 

 (a)
 

 A fifth, species of awards has been created by the act of 20th March 1810 (5 Sm. L. 181), which authorizes either party to refer a suit to arbitrators.
 

 (b)
 

 This rule has since been recognised in many reported cases. See particularly Williams
 
 v.
 
 Paschall, 3 Yeates 569; Hurst
 
 v.
 
 Hurst, 1 W. C. C. 56; Large
 
 v.
 
 Passmore, 5 S. & R. 52.
 

 (a)
 

 See the note to Henry v. Risk,
 
 ante,
 
 p. 265.