[In Case No. 6,940 a motion for a continuance on the ground of an improper publication was denied.]

## Case No. 6,929.

HURST v. HURST.

[3 Dall. 512.]

Circuit Court, D. Pennsylvania. April Term, 1799.

### TRIAL—CONTINUANCE.

[The refusal of one of the parties in an action at law to file an answer to a bill seeking discovery of facts essential to the case of his opponent is a ground for the continuance of the trial.]

This cause being marked for trial, Ingersoll moved for a continuance, on the ground, that a bill in equity had been filed by his client, the defendant, in the circuit court, for the New York district, calling for a discovery and account, in relation to the matters in controversy in the present suit; but that the plaintiff here had refused to file an answer to the bill, in consequence of which, an attachment had issued against him. After some remarks by Rawle, in opposition to the continuance,

## Case No. 6,930.

HURST v. HURST.

[1 Wash. C. C. 56.] [1]

Circuit Court, D. Pennsylvania. April Term, 1803.

ARBITRATION AND AWARD—SETTING ASIDE OF AWARD—EVIDENCE—SET-OFF.

1. In what cases courts will interfere, and set aside an award of referees.

2. In Pennsylvania, it is not necessary that a mistake by the referees in point of law, should appear on the face of the award, to induce the court to set it aside; they will re-examine the documents on which the referees decided.

3. In such an examination into an award, no new evidence can be admitted.

4. Whether the debt of one partner, in a joint concern with others, not yet closed, can be set off in an action by one partner against the other?

5. The nature of set off.

[Cited in Barton v. Anthony, Case No. 1,084.]
[Cited in Rand v. Redington, 13 N. H. 77.]

This was a motion to set aside an award.

WASHINGTON, Circuit Justice. On the third day of May, 1801, an agreement was entered into between Charles Hurst the plaintiff, and Timothy Hurst the defendant, which recites, that five actions were then depending between them, and which are more particularly described as follows: 1. An action on the case in the supreme court of Pennsylvania, in which Charles is plaintiff and Timothy defendant. 2. An action of sci. fa. in the supreme court of Pennsylvania, in which Charles is plaintiff, and John Norris, administrator of John Baron, is defendant; in which Timothy alleges himself to be interested as assignee of all the estate of the said Baron. 3. An action of false imprisonment, brought by Timothy against Charles, in the mayor's court of the city of New-York. 4. A bill in chancery depending in the circuit court of New-York, wherein Timothy is complainant, and Charles and others are defendants. For the set-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

tlement of these controversies, the parties mutually agree to discontinue the above suits, in which they are respectively plaintiffs; such discontinuances however not to operate as releases of the several demands involved in those suits. For the adjustment of three of those suits, the parties agree each to furnish the other with their accounts, to enable them to effect an amicable settlement of their differences; and in case this could not be effected, they agree to submit their differences to arbitrators to be appointed by this court, such arbitrators in matters of law to be guided by the opinions of certain law characters named by the parties. On the 20th of September, 1801, an amicable action was docketed in this court, wherein Charles Hurst is plaintiff and Timothy defendant; and by a rule of court, the same was referred to three persons, to hear and determine the matter in difference between the parties, which are recited in the agreement of the 3d of May, 1801, and according thereto. The referees have made their award, by which they report a balance due on the scire facias suit from Charles to Timothy, in right of Baron, of 13,085 dollars, 87 cents. That this balance is exclusive of the real estate, goods and chattels of the said Baron, in the possession of Charles Hurst, and which the referees award to be assigned and given up to Timothy on demand. In the false imprisonment cause, they award to Timothy 666 dollars, 67 cents. In the chancery suit, the sum of 2,607 dollars is stated to be due from Charles to Timothy, which is awarded to the latter; and the estate, which had been conveyed by Timothy to Charles in trust for certain purposes, yet remaining unsold, is awarded to be re-conveyed. As to the action on the case, Charles v. Timothy, the referees say, that "upon the settlement of accounts to the 1st of May 1801, comprehending the sums above mentioned, they find the sum of 15,171 dollars, 70 cents, is the balance due from Charles to Timothy,"

It is ageed that the fifth action mentioned in the recital to the agreement, has been settled, and is not involved in the present dispute. It is also clear, that in the action on the case by Charles v. Timothy, a deduction is made from the aggregate amount of the three sums found due to Timothy, of 1,160 dollars, 84 cents; which gives the amount of the award in favour of Timothy in that suit, although it is informally stated in the report. This will appear by deducting the 15,171 dollars, 70 cents, from the aggregate amount of the three sums found due to Timothy. Exceptions to this report having been filed within the proper time, a motion is now made in behalf of Charles Hurst to set aside this award, for the following reasons: 1st. That jurisdiction is not laid in the declaration. 2d. That the referees were guilty of a mistake in refusing to admit sundry credits, which are spe-

cially enumerated, to which Charles was entitled. 3d. That the award is uncertain. 4th. That damages are awarded to Timothy in the action of assault and battery, whereas that suit was not submitted. 5th. To the award of the 2,607 dollars on the chancery suit. To support the second and fifth exceptions, it was necessary for the plaintiffs to go into the examination of the written evidence upon which the referees decided, in order to make out the title of the plaintiff to the credits claimed, and to show the mistake in allowing the debit mentioned in the fifth exception. Upon a hint from the court that this attempt to impeach an award was unusual, the act of assembly of this state was read, and a decision of the supreme court of this state was strongly relied upon as expounding the statute. Without being satisfied that the statute and decision referred to had varied the rule as laid down in the English cases, the court allowed the plaintiff to proceed with the examination, and determined to look into the legal principle more at leisure. The statute of Pennsylvania, passed in 1705, declares, that where a reference is made under a rule of court, the award of such referees being made according to the submission, and approved by the court, and entered upon the record; shall have the same effect, and be as available in law, as a verdict.

The chief justice of the supreme court, in the case of Williams v. Craig, 1 Dall. [1 U. S. 314] lays it down; that where there is an evident mistake in matter of law, or a clear mistake in matter of fact, the court cannot approve the award, and ought therefore to set it aside. In the case of Kunckle v. Kunckle [Id. 365] in the common pleas of Philadelphia, the president narrowed very much the rule laid down in the above case, by saying, that the courts never enter into the merits of the case decided by the referees, or set aside their report, but for misbehaviour, or where objections to it arise on the face of the proceedings. This is the strict rule in England. In the case however of Pringle v. M'Clenachan, [Id. 486], afterwards decided in the common pleas, the court set aside a report, because it appeared that the referees had proceeded upon a mistaken principle; and this mistake, as I understand the case, did not appear upon the face of the award, but from the evidence which was before the referees. Now, there is very little difference between the principle of this case and that of Williams v. Craig. In both, the court corrected a mistake in point of law which did not appear on the face of the report, but was made out by a re-examination of the documents upon which the referees had decided. The error committed in the latter case was not by declining the consideration of a particular subject, but by adopting a principle which, when applied to that subject, led

to a conclusion not warranted by the rules of law. The rule in England is, I think, too rigid to consist with the spirit of the law in this state—that contended for at the bar by the plaintiff's counsel, is much too loose. It is too much to say, that because the court might not have drawn the same conclusions as the referees have done, from the evidence, that therefore they will set aside their report. If awards were liable in every instance to be opened, and the questions, which the referees have decided, to be re-tried and re-examined by the court, the utility of this mode of deciding controversies would certainly be very questionable. If, on the other hand, awards were to be considered too sacred to be impeached; if, notwithstanding the most injurious mistakes have been committed, every door is to be closed against the court's arriving at the knowledge of the facts upon which the referees decided, I should strongly incline to doubt, whether this mode of trial would deserve half the encomiums, which have been passed upon it. It would be to say that whatever may be the degree of injustice committed by the mistakes of arbitrators, yet the court must approve and give validity to those mistakes, if the referees have been cautious enough not to spread them upon the face of the award.

Upon the whole, I am perfectly satisfied, that the inquiry in this case has been proper. That it was the duty of the court to examine the accounts and documents laid before the referees, to see if they had refused to allow the credits claimed by the plaintiff. In such an examination, no new evidence can be admitted; and in deciding upon that which was before the referees, if they have drawn conclusions from conflicting evidence, different from that which my mind would approve, it would be improper, on that account, to say, that their conclusion is wrong. If on the other hand, plain facts or principles of law have been misapprehended, I could not say that I approved of their report. The principal sum reported in favour of Timothy Hurst, is 13,085 dollars, 87 cents, due from Charles to John Baron; to which Timothy is entitled as general assignee of the estate of Baron. No exception is taken to this debit; but it is insisted, that Baron was indebted to Charles Hurst in four several sums advanced by him in the purchasing and securing certain lands, in which Baron, Morris, Charles, Timothy, and John Hurst, were interested as tenants in common; which credits, it is contended, ought to be deducted from the debt awarded to be paid to Baron's assignee. The answer to these claims is conclusive. At the time when this land company was formed, an agreement was made between the three Hursts, the original members of the copartnership, and Baron and Morris, by which the former agreed to advance all the money necessary for purchasing and securing the lands, in consideration of the personal services to be rendered by Baron and Morris, in pointing out the lands proper to be purchased; and by an express stipulation in that agreement, whatever sums of money should be advanced by the Hursts, were to be charged upon the lands, and were to be repaid, by sales of any part of them, before a division should take place between the partners. The credits now claimed by Charles Hurst, are for Baron's proportion of advances made on account of the partnership fund; and consequently, are, by the agreement, to be charged, not personally to Baron or his assignee, but to the joint fund, the land. This fund, it is admitted, has always been, and still is, under the management and control of Charles Hurst, who consequently has within his own power the proper fund for satisfying these demands. But it is said, that the agreement does not discharge the person or the estate of Baron, from this demand; and that it is only intended to constitute the joint stock as an auxiliary fund. This construction of the agreement, is inadmissible. The most that can be contended, is, that Baron might be made ultimately liable to make good these advances; and in that case, it should appear, that the fund first to be charged was exhausted, before these advances could be converted into a personal demand. But this is not contended. But is it true that Charles Hurst had not received credit for the sums now claimed? With respect to the first sum of 2,692 dollars, 98 cents, for Baron's proportion of advances, as settled in England, the referees (who have been examined) state that they opposed to this sum the consideration money of a tract of land, sold by Baron to Charles Hurst, in the year 1799. It is true, there is endorsed upon the conveyance of that land, a receipt for £500, the purchase money; but this does not furnish satisfactory evidence that the money was actually paid by Charles Hurst to Baron; because it is usual to endorse a receipt for the consideration money on all deeds of bargain and sale, although not a farthing be paid, and because Baron being at that time indebted to Charles Hurst for his proportion of the advances now claimed, it is at least probable that that conveyance was intended as a satisfaction of those advances. At any rate, I have not sufficient light to say that the referees have made a clear mistake in refusing to admit these credits. As to the other credits of 5,175 dollars, 76 cents, and 2,147 dollars, 77 cents, claimed under the second exception, it is most obvious that Charles Hurst, in the account stated between him and the joint fund, has credit for the whole of these advances against the money raised out of those funds, and which are there to be placed to his debit. That which is so clearly proved by figures, cannot be rendered more clear by argument and explanation. The objection made by Charles Hurst, in his fifth exception, to the allow-

ance of 2,607 dollars, is certainly without foundation. Charles Hurst and Timothy Hurst united in a bond to a Mr. Brownjohn, to indemnify him against his responsibility as surety for them, in a bond to Foliot, for money lent to them, to enable them to purchase lands for the company. Charles Hurst, of course, was not only bound in law to indemnify Brownjohn, but retaining the possession and management of the joint funds, he was bound in equity to indemnify his partner Timothy Hurst. It is true, that Charles Hurst was sued by Brownjohn, and judgment against him was rendered and satisfied. His obligation to Brownjohn was thereby at an end. But the court of chancery of the state of New-York determined, in a suit against Timothy, that Brownjohn was entitled to a further sum for his complete indemnification, and by its decree compelled Timothy Hurst to pay to the executors of Brownjohn, the sum now objected to. This decree, made by a court of competent jurisdiction, it would ill become this court to question, by producing an injury to Timothy, which Charles might and ought to have prevented, and against which he was entitled in equity to be indemnified by Charles Hurst. furnishes Timothy with a well founded charge against Charles, and consequently the amount of that injury was properly debited to Charles.

The fourth exception is so totally unfounded, that little need be said respecting it. I presume it would not have been made, if the counsel for the plaintiff had not been misled by the erasure in the counterpart of the agreement which Charles Hurst had.

The third exception is to the uncertainty of that part of the award, which directs Charles Hurst to deliver up to Timothy, the real and personal estate, which were of John Baron, remaining unsold, and now or lately in his possession; and also the estate conveyed by Timothy to Charles, in trust. To which is added, in argument, though it forms no part of the exceptions, that those parts of the award are not within the submission. As I am perfectly satisfied that these parts of the award are not within the submission, and that the objection appearing upon the face of the award may be taken advantage of, without an exception being filed, it will be unnecessary to give any opinion respecting the uncertainty of it. The submission is not general, of all matters in controversy; but is special, and confined to the matters in dispute, in four actions then pending between the parties. The right of Timothy to recover a debt due from Charles to Baron. in the action of sci. fa., or to be indemnified against a decree obtained against him by Brownjohn's executors, and for which his suit in chancery in the circuit court of New-York was brought, or to be compensated in damages for false imprisonment (the three suits in which Timothy was plaintiff and which were submitted) could never directly or incidentally involve the questions, whether Charles Hurst, as trustee for Timothy, in Timothy's own right, or as assignee of Baron. had a right to retain those estates, or was bound to assign them to Timothy. The agreement of 1797 can by no fair means be pressed into the service, in order to clothe the referees with the power of deciding these two points. But as those parts of the report are entirely independent of the other parts of it, the award, though void as to them, is good as to such other parts, and must be confirmed. Should Timothy attempt to execute the parts of the report now declared void. the court can prevent him from proceeding.

[A bill in equity seeking relief from this award was subsequently filed by Charles Hurst, and, upon demurrer, was dismissed. Case No. 6,-932. An execution issued upon a judgment obtained in the state court was sustained. Id. 6,931.]