## RAND, Adm'r, vs. REDINGTON.

A court of equity will set aside an award of arbitrators, whenever such manifest and palpable injustice is done as to show fraud, misconduct, or evident mistake on the part of the arbitrators.

The damage awarded may be so excessive as of itself to show fraud or error; and where this is not so, but the award is extraordinary in its amount, it may, in .connexion with other circumstances tending to show improper conduct on the part of the arbitrators, be sufficient to set aside an award.

Where an award was large and extraordinary, and was rendered in favor of a party insolvent and indebted to the arbitrators, or their relatives; and it was immediately, on being made, assigned for their benefit, and there was other evidence tending to show that the arbitrators might not have been impartial, an injunction was granted against enforcing the award.

IN EQUITY. The bill stated that on the 18th January, 1834, Ebenezer Eaton obtained from the U. S. government

a certificate entitling him to a pension of $8.00 per month, and that in March, 1834, he presented it to Hamlin Rand, and desired him to draw the necessary papers for procuring the first instalment, then due ; which Rand did, and advanced to him $13, the amount of the instalment, wanting sixty-seven cents, retained by him for his charges.

Eaton then remarked, that before the next instalment would be due, in September following, he should want goods, grain, cash, &c., of Rand, on credit, to the amount of the instalment ($48,) and requested Rand to retain the certificate, promising at the proper time to execute the papers necessary to entitle Rand to receive the money of the pension agent. Rand assented to this proposal, and advanced to Eaton goods, cash, &c., to the amount of $48 and more, prior to September, at which time Eaton called and executed the papers, according to promise, and proposed the same arrangement for the next half year, to which Rand agreed.

Before the next pay day, in March, 1835, Rand advanced cash, goods, &c., to the amount of $106 to Eaton; who, however, declined to execute the papers, and demanded the certificate, unless Rand would advance $20 farther in cash, which Rand declined doing.

Rand never received any other money than the first two instalments above named, and Eaton has received the several instalments since.

At November term, 1835, Rand recovered judgment in an action for the goods, money, &c., advanced from Sept. 4th, 1834, to March 4th, 1835, for $110.38, and $16.94 costs of suit, which is wholly unsatisfied.

At July term, 1836, Eaton filed his bill in chancery, complaining that Rand fraudulently kept his certificate and had obtained certain sums of money thereon. An answer was made at the same term, and the cause was continued.

Rand died in August, 1836, and the plaintiff, who is his administrator, agreed with Eaton to submit the suit of Eaton and Rand, and all other matters and things connected there-

with to the determination of three arbitrators, mutually chosen by them.

Under the submission to the arbitrators Eaton filed the following claim:

| | |
|---|---|
| To money drawn on order from U. S. Treasury, not accounted for, | $48.00 |
| Interest on the same, | 1.44 |
| Damages occasioned by detention of pension certificate, subjecting me to divers journeys, suits and expense, loss of time, and of interest money incurred in consequence of the detention, | 300.00 |
| Costs in chancery suit relative to the detention of certificate, and damages occasioned thereby, | 32.70 |

He also filed a specification of his general charge, as follows:

Journey to Dover, and absence 12 or 15 days, with horse and sleigh.

Ditto to Portsmouth, and absence 12 or 15 days, with horse and carriage.

Three journeys to Haverhill, Bath, &c.

Journeys to Lancaster, with horse and carriage.

One do. to Concord, with horse and carriage, · $100.00

The first charge, for money received from the U. S. treasury, was withdrawn, leaving remaining items amounting to $334.14.

The plaintiff submitted, on the part of Rand's estate, the judgment recovered by him against Eaton.

The arbitrators awarded that Rand should return the certificate and pay Eaton $434.14 damages, and costs taxed at $15, being $100 damages more than the amount claimed.

Eaton commenced his action on the award at May term, 1837, which now stands continued, and this bill is filed to set aside the award, on the ground that the arbitrators were not impartial men; were guilty of fraud and mistake in

accepting and discharging the trust, and that the damages rendered were altogether excessive and unwarrantable.

It appeared in evidence that Eaton was at the time insolvent, and indebted to the firm of Ely & Redington; Ely, Farr & Co., and G. B. Redington & Co., of which firms the son of one of the arbitrators was a member. He was also indebted to another of the arbitrators in a considerable amount, for which he had mortgaged his real estate as security. The arbitrator was also surety for Eaton on a jail bond, and on a note. Eaton was indebted to another of the arbitrators in a small amount.

The next day after the award was made, Eaton assigned the award to George B. Redington, in trust for the payment of the debt to Rand, and of the debt of one of the arbitrators; and a portion of the large debt to the other arbitrator, and the debts due the several firms above named.

There was evidence tending to show that one or more of the arbitrators had expressed an opinion relative to the case prior to the hearing.

*Livermore*, (with whom was *Bell*,) for the plaintiff, contended, 1. That the award was extravagant and outrageous, and should therefore be set aside.

Awards may be set aside in equity, when so extravagant that on first blush the award appears outrageous and unjust, 17 *Johns.* 405, *Cortlandt* vs. *Underhill.*

Excessive damages may be a good cause to set aside an award. 4 *Mass. R.* 41, *Coffin* vs. *Coffin.*

2. If the award is not sufficiently excessive to justify setting it aside on that ground, it should lead the court strictly to scrutinize the doings of the arbitrators, and their position in relation to the parties. The indebtedness of Eaton to the arbitrators, taken in connection with the fact of the excessive amount of damage rendered by them, and that the award was immediately assigned to pay the debts of the arbitrators, shows either a corrupt intention to profit by the award, or

such evident bias and partiality as to disqualify them from acting as arbitrators.

*Bellows*, for the defendant. Awards are not to be set aside because excessive, unless there is evidence of corruption or partiality. 2 *Hovenden on Frauds* 239 ; 2 *Story's Eq.* 677. The grounds of corruption or partiality assigned are wholly insufficient to sustain such a charge.

Farther : The award being partly performed, by the delivery of the certificate, a court of chancery in such case will afford no relief. 1 *Chit. Eq. Dig.* 81 ; 2 *Vernon* 24 ; 17 *Vesey* 241.

*Livermore & Bell*, in reply, cited 1 *Mad. Chan.* 295, and 2 *Story's Eq.* 675, 676, as containing the grounds on which awards should be set aside. They contended, if the arbitrators looked in any way to the award for their security, it would vitiate their acts.

UPHAM, J. In all cases of fraud, mistake, or accident, courts of equity may, in virtue of their general jurisdiction, interfere to set aside awards. 2 *Story's Eq.* 675.

This power is sometimes exercised by courts of common law, in cases of corruption and gross partiality of the arbitrators, where the submission is by rule of court. 3 *Johns.* 367, *Barlow* vs. *Todd ;* 9 *Ditto* 212, *Cranston* vs. *Kelly ;* 5 *Cow.* 425, *McKinney* vs. *Newcomb ;* and in Massachusetts, corruption or gross mistake of arbitrators may be shown in defence against an action on an award. 4 *Pick.* 192, *Brown* vs. *Bellows ;* 6 *Pick.* 269, *Bean* vs. *Farnam.*

In courts of law, excessive damage is also a good ground to set aside a verdict, where, from its exorbitancy, the court may reasonably presume that the jury in assessing the damage did not exercise a sound discretion, but were influenced by passion, partiality, prejudice or corruption. 4 *Mass.* 41, *Coffin* vs. *Coffin ;* 5 *Ditto* 435, *Commonwealth* vs. *Justices of Norfolk ;* 15 *Mass.* 365, *Sampson* vs. *Smith ;* 5 *Cow.*

106, *Sargeant's Case.* And the same ground which will induce a court to set aside a verdict of a jury, and grant a new trial, will induce them to vacate an award. 1 *Dall.* 315, *Williams* vs. *Craig;* 2 *Cow.* 458, *Bassett's Case;* 1 *Wash.* 56, *Hurst* vs. *Hurst.* Excessive damage is conclusive either of fraud or mistake ; but the damages must be so exorbitant as to be accounted for in no other manner. 17 *Johns.* 405, *Cortlandt* vs. *Underhill.*

In this case we do not hold that the award is so excessive as, of itself, necessarily to show mistake or corruption. It is, however, an award of such an extraordinary character as requires us to scrutinize closely the proceedings of the arbitrators, and the relation in which they stand to the parties.

The matter submitted to the arbitrators was a claim of damage for the detention of a pension certificate, which had been pledged with Rand as security for cash and goods advanced upon it, amounting to one hundred and six dollars. Eaton demanded the certificate without proffering payment of any part of the debt ; and Rand refused to deliver it without payment of at least twenty dollars.

The refusal to deliver the certificate cannot be sustained in point of law ; but it was no more unjustifiable, as regards equity betwixt the parties, than the refusal of Eaton to pay the small amount asked towards Rand's claim. The wrong began with Eaton, and it was owing to his persisting in this wrong that he incurred the expense of which he complained. From this expense he should, in justice, on an adjustment betwixt the parties, deduct Rand's claim, and a reasonable allowance for his gross breach of faith in refusing payment of any portion of the amount against him, at the time the certificate was demanded.

Such was the state of the controversy betwixt the parties, and the course we should expect the arbitrators to take in relation to it ; but the proceedings show an entirely different view of the subject. Eaton, on the hearing before them, submitted a large claim, in round numbers, for damage.—

There is no reason to doubt that he asked all he had any just ground to recover; but the board of arbitrators, as is apparent from the specification of Eaton's claim, as filed by him, allowed him one hundred dollars more than he asked. This alone has been deemed sufficient to vacate an award. In *Biggs* vs. *Funk*, 5 *Watts* 478, it is held that a judgment on an award that exceeds the party's claim, as set out in his statement, is erroneous, and will be reversed unless the excess be remitted.

The arbitrators not only made this allowance, but in their haste to make up their award, they also allowed the interest on a charge for money, the principal of which they rejected as having never been received by Rand. Still further, they took no notice whatever of Rand's claim. This claim was unquestionably submitted to the action of the board, because "the suit relative to the detention of the certificate, and all other matters and things connected therewith," were referred to their determination; and on the hearing, evidence was offered, without objection, to sustain it. But an award was made to the defendant of $434.14 damage, and costs, without any mention of this claim.

It was clearly the duty of the arbitrators to find the balance only on the claims of the parties. If they did this, Rand's claim was cancelled, and an award was thus in fact rendered for the sum of $559.46; an amount more than two hundred dollars larger than Eaton asked to be allowed him. The arbitrators either intended to do this, or they were guilty of gross neglect, in so forming their award as to subject the plaintiff to the hazard of a full payment to Eaton, or to abide the contingency of a defence by set-off of his claim, which they themselves should have adjusted, and thus terminated the controversy betwixt the parties.

There is no accounting for such an award, except on the ground of corrupt intention on the part of the arbitrators, or gross carelessness, or indifference to the rights of the plaintiff. The fact that Eaton was indebted to the arbi-

Rand *v.* Redington.

trators and their friends, and that the award, when rendered, was immediately pledged for the payment of their claims, strongly fortifies us in this conviction. The arbitrators say they were not present at the time this arrangement was made, and did not participate in it; but there is reason to believe that such a result was expected by them, and that the award would be at once appropriated for the benefit of the creditors named.

The award is exorbitant, if not excessive. There was an interest on the part of the arbitrators to make it so,—it was for an amount greater than the party claimed,—was rendered without the proper protection to the claims of the opposite party, and was immediately applied in part to the benefit of the arbitrators. We are satisfied, from the evidence on these points, that the arbitrators were not actuated by the proper spirit to determine the rights of these parties, and that their award was influenced by such partiality, prejudice, and interest, or such culpable carelessness, as to avoid their proceedings. We shall, therefore, direct an injunction to be served on the defendant against enforcing the award.