# Tracy *v.* Herrick & a.

Courts of equity will interfere and set aside an award of arbitrators, whenever such manifest and palpable injustice is done as to show fraud, misconduct or evident mistake on the part of the arbitrators.

Courts of law will set aside a report in cases where a return is by law made to the court, if corruption, partiality, gross mistake or evident misconduct shall appear.

An award will not be set aside for subtle and technical exceptions; and if the court are satisfied that the award has been fairly made, they will endeavor to sustain it so far as may be, and all matters connected with it will receive a fair and liberal construction.

An award which would be defective on account of irregularity in the meetings of the abitrators, will be made good by an agreement of the parties that such irregular meetings shall take place.

If a submission to arbitrators provide that the award shall be made and set down in writing, indented, and ready to be delivered to the parties, but the parties afterwards agree that the award shall be left in the possession of one of the arbitrators, for the benefit of all the parties, and it be so done, the award will be good.

It *seems* that if true copies of an award be delivered to the parties, and be received by them without objection, it will be sufficient.

An award embracing matters not within the submission, but so made that those actually submitted are decided and can be enforced, is void only so far as it exceeds the submission.

Where the parties were partners, and took a contract of a corporation to do certain work, and were unable to agree among themselves as to the settlement of

Tracy *v.* Herrick.

the same, and submitted the contract and settlement to arbitrators, who awarded the sums due each, and also awarded that one of the parties should draw the money and close the business—*Held*, that the arbitrators did not exceed the submission.

In EQUITY. The bill alleges that Tracy, the orator, and Herrick & McKew, the defendants, entered into a copartnership, for the purpose of procuring and performing a contract with the Manchester and Lawrence Railroad Corporation, to grade the seventh section of the road, situated in Derry, in this county, the gain and loss to be equally divided between them; and on the same day, which was the 26th of May, 1848, they took the contract of the corporation accordingly, the work to be done in a specified manner, at stipulated prices, and at specific times. That on the 29th of May, 1848, they commenced the work, and that the orator, being illiterate and unable to write or read writing, proposed to Herrick that some suitable person, not connected with the contract, should be appointed to keep the books of the partners relative to their, and each of their, doings; but that Herrick would not agree to it, stating that he understood the art of book-keeping, and would keep them himself; and that the orator, confiding in Herrick, agreed that he should do so; and that it was then agreed that he should keep the books relative to all the doings of the co-partners, and each of them, and their respective work, labor and outlays relative thereto, and should receive and disburse all the moneys, and should finally pay over to the co-partners whatever should be due to each.

That the co-partners went on and finished the work the 18th day of August, 1849, to the acceptance of the corporation; that the work amounted to $19,185, 79, which sum was paid into the hands of Herrick, during the construction and at the completion of the work, the whole amount being paid on or before January 5th, 1850.

That the orator contributed towards the fulfilment of the contract, in means and labor, to the amount of $3,000, or

Tracy v. Herrick.

thereabouts; the precise sum he cannot state, for the want of access to the books kept, or to have been kept, by Herrick; and that a large sum is now due the orator on that account.

That the fulfilment of the contract was the occasion of much profit to the co-partners, but how much the orator could not tell, for the want of a statement of the accounts from Herrick.

That the orator has requested Herrick to come to a final settlement of the accounts, and to give a full and fair statement of the same, but that he, confederating with McKew, utterly refuses so to do; and pretends that there is nothing due to the orator, and that the contract has been a source of loss, instead of gain, to the co-partners.

That Herrick has artfully quieted McKew, in some way unknown to the orator, so that McKew refuses to join in this proceeding.

The bill then alleges that the defendants pretend that on the 5th of September, 1849, the parties entered into a bond of $500, to refer all matters between them to J. T. P. Hunt, Hiram Brown and George W. Pinkerton; that the bond provided that the hearing should be had without the intervention of attorneys, and that all the parties should produce all their books and accounts before the arbitrators, and that the award should be under the hands and seals of the arbitrators. That on the 27th of December, 1849, the arbitrators made an award, finding due to Herrick $2,639,87, to McKew $859,01, and to Tracy $321,44. That the arbitrators further reported that Herrick, being more familiar with the liabilities of the firm, should draw the balance due from the corporation, and pay the same to the partners, that the gain and loss should be shared equally by the parties, and that the co-partners signed an agreement on the back of the award, agreeing to abide by the decision of the arbitrators.

The orator admits the agreement to refer, and the award;

and also the agreement to abide by the decision entered upon the back of the award; but says that when they entered into the agreement to refer, nothing was said about a hearing without the intervention of attorneys, and that when the agreement to refer was read, he did not understand the import of the clause " without the intervention of attorneys," and how it came to be introduced he does not know, unless it was by the private suggestion of the defendants, .or on the mere motion of Pinkerton, who drew it. That when he executed the agreement, he did not know or suspect but that all the accounts of the partnership had been duly and fully kept by Herrick; that the other parties have had the advantage of books and papers duly kept, but he has not, and that he was without the learning and ability necessary to sustain his just claims before the arbitrators.

He says, further, that the pretended award is not the same as the award of the arbitrators; that after the award was signed, and after the agreement to abide by it was also signed, McKew came to Pinkerton, and told him there was a mistake of four dollars, and that Pinkerton altered the award to that extent in favor of McKew, in the presence of the orator; and that McKew has since repeatedly told him that Pinkerton did so alter it.

The bill then charges that there never was a full hearing before all the arbitrators when they were together; but, on the contrary, sometimes Hunt and sometimes Pinkerton, each by himself, heard the parties, at different times, between the 5th of September, 1849, and the 27th of December following; that Brown was absent from the State till about the 27th of December; and that the only matters heard by all when together, out of the many matters in dispute, were relative to the personal services and labor of the co-partners, and in relation to a certain stone. That after the arbitrators had been together, the orator and Herrick and McKew came into the room, and found Pinkerton there alone; that

Tracy *v.* Herrick.

Pinkerton produced a paper folded up, and laid it on the table, and said they must sign it before knowing the contents; that they all signed it; that what they signed was the agreement to abide by the decision of the arbitrators; but the orator did not know it, but supposed it was something he must sign, or subject himself to the penalty of the bond.

The bill further alleges that the orator had become so perplexed and disheartened, by reason of the protracted hearings and the difficulties attending the same, that he was quite incapable of understanding his rights, or of asserting and defending them; and that his claims to the amount of $200 were omitted to be laid before the arbitrators, through forgetfulness. That the award is unjust, unequal, and was unfairly obtained, and that the orator ought not to be bound thereby, but ought to be relieved therefrom; and that the defendants ought to come to a full account in the premises.

The bill then interrogates specifically as to the general allegations contained therein, and prays that the agreement to refer, and the award and the agreement to abide by the same, may all be set aside, and declared to be null and void; and that a full account may be made of all matters and things touching the affairs of the partnership; and that the defendants, or one of them, as justice may require, may be ordered to pay the orator what, if anything, upon taking the accounts, shall appear to be due for his work and labor and outlays, and also his share of the profits arising out of the contract. The bill also prays for general relief.

The defendants, in their answers, admit the formation of the partnership, and the taking of the contract of the corporation. They admit that the contract was performed, and the money received therefor. They also admit the submission to arbitrators, and the award, and the agreement to abide by the same.

But they deny, both generally and specifically, all unfair-

ness or over-reaching between the parties, from the beginning of the partnership to the signing of the agreement to abide by the award. The answers are full and explicit; and from them it would appear that there had been no deception practised or advantage taken of the orator in any way whatever, and that he received by the award all that properly belonged to him. McKew says further, that after the hearing and report, he took no pains to preserve his papers and vouchers, and that a re-hearing would do him great injustice.

The bond of submission was dated September 5th, 1849; and the condition of it was as follows: " The condition of this obligation is,—That if the above bounden Israel Herrick, Patrick Tracy and Thomas McKew, their executors and administrators, shall refer all matters of dispute that may arise between the said parties concerning a settlement between them, on a contract made by said parties with the Manchester and Lawrence Railroad Corporation, dated May, A. D. 1848, to Hiram Brown, J. T. P. Hunt and George W. Pinkerton, arbitrators, indifferently chosen by said Israel Herrick, Patrick Tracy and Thomas McKew, to arbitrate and award concerning all matters of dispute between said parties concerning said contract; and provided said parties, their executors and administrators shall, without intervention of attorneys, appear before said arbitrators whenever said arbitrators shall notify them so to do; and shall lay before said arbitrators such books and papers and other evidence, pertaining to said contract and settlement, as may be in the possession of any one of said parties; and if said parties, their executors and administrators, shall well and truly perform and keep the award and determination of said arbitrators, or any two of them, concerning said contract and settlement, so as the award of said arbitrators, or any two of them, be made and set down in writing, indented under their hands and seals, or the hands and seals of any two of them, ready to be delivered to the parties in differ-

ence as soon as said arbitrators deem practicable, then this obligation shall be void, otherwise in full force and virtue."

The award made and signed by the arbitrators was dated December 27, 1849, and was as follows:

" The undersigned, arbitrators on the accounts submitted by Herrick, McKew and Tracy, for adjustment, submit the following report:

We find due Mr. Herrick, for amount paid out, personal
services, &c., &c.........................$17,740 32
Less amount received from M. & L. R. R., &c., &c. 15,100 45

                                            2,639 87

We find due Mr. McKew, for amount paid out, personal
services, &c., &c., &c.......................$1,113 70
Less amount received from Herrick, &c., &c.....   254 69

                                              859 01

We find due Mr. Tracy, for amount paid out, personal ser-
vices, &c., &c., &c........................$1,918 00
Less amount received of Herrick, &c., &c...... 1,596 56

                                              324 44

Mr. Herrick, being more familiar with the liabilities of the firm, shall draw the balance due from the Manchester and Lawrence Railroad, or from any other source, and pay the same, including the amount due each partner, as above stated. The gain or loss shall be shared equally by the parties."

The agreement upon the back of the award, signed by the parties, was dated December 27, 1849, and was as follows:

" The undersigned, parties to the accompanying report, hereby agree to abide the decision of said arbitrators."

At the date of the award, there was due from the Railroad corporation the sum of $4,397,07, being part of the $19,185,79, which the work amounted to.

Tracy *v.* Herrick.

Of this amount Tracy has received $119,23, and the balance is in the hands of Herrick.

The whole amount of the claims, including the award to the co-partners, is $5,270,32. Claims, independent of the amount due to the co-partners, $1450, some of which were disputed. The awards to the co-partners amount to $3,820,32. If all the claims should be paid, there would be a loss to the co-partners. After settling the outstanding claims, Herrick is ready to pay over the balance to the co-partners.

*Porter,* for the orator.

I. All the referees did not hear the parties as to all matters in dispute. Pinkerton and Hunt had the parties before them, or some of them, from time to time, when it is said the parties agreed to certain things, and disagreed as to others. The matters alleged to have been agreed, were subsequently reported to Brown by Pinkerton and Hunt, and Brown had no evidence concerning them except what was communicated to him by the other referees. Pinkerton and Hunt were also dependent upon each other in regard to many of the alleged confessions, as they were not always both present when they are said to have been made. So far as the award was based upon supposed confessions and agreement of parties, it was made up upon the merest hearsay evidence of the most suspicious kind.

There was no hearing before all the arbitrators when together, of the whole case, and no witnesses were examined as to any matter in dispute or not in dispute ; and no sufficient time was consumed to enable all the arbitrators to understand any considerable part of the case.

In regard to the supposed admissions of the parties, it was proper for all the referees to know by legal testimony what they were, and whether they were attended with any qualifications, allegations or reservations.

The case was in fact tried partly before one of the ref-

erees, and partly before another, and partly before all three of them ; and the evidence shows that such was in substance and in effect the true state of the matter, notwithstanding the very adroit attempt to ward off such a conclusion.

Such being the state of the facts, we contend that the award must be set aside. Upon a submission to three arbitrators, if two, by any undue means, exclude the third, it is sufficient to set aside the report. So if the arbitrators hold private meetings with the parties, or receive evidence after the hearing is closed. *Bassett* v. *Harkness*, 9 N. H. Rep. 164.

Every execution of a power must have reference to the original instrument creating that power, and whoever claims under the execution must make title under the power itself. *Robinson* v. *Handcastle*, 2 D. & E. 241.

It was necessary that all the referees should be together and hear and determine the whole case. 3 D. & E. 38 ; *King* v. *Palmer*, 5 N. H. Rep. 52 ; *Tappan* v. *Bellows*, 1 N. H. Rep. 100 ; 2 East 244 ; 8 East 319.

II. The award was not indented and tripartite, as provided in the agreement to submit. The interests of the parties to the submission were separate, and not joint. There was much propriety, therefore, in the clause providing that the award should be indented, which of necessity implies that it should be tripartite. If the arbitrators executed but one paper containing their award, as was in fact the case, it would not be put in the equal possession and control of the parties.

An award annexed to a lease on a separate piece of paper, is not valid under an agreement to submit to an award indorsed on the lease. *Montague* v. *Smith*, 13 Mass. Rep. 396.

An award must be in pursuance of the submission, and if there be a material variance between the two, it will be fatal. 8 N. H. Rep. 516 ; *Spofford* v. *Spofford*, 10 N. H. Rep. 254 ; *Loring* v. *Allen*, 3 Met. Rep. 576.

III. The unusual provision in the bond of reference that the hearing should be without the intervention of attorneys, is novel and singular. It was not thought of or suggested by either party, but appears to have been a contrivance of one or more of the referees; and, connected with the mode of trial afterwards adopted, is a very significant fact. What effect it may have had in producing the result the referees came to, it is impossible to say. One effect it has most certainly had, and that is, to render it impossible to investigate the doings of the referees, except through biased and interested witnesses.

IV. The agreement to abide by the award cannot operate as a waiver of any of Tracy's rights. It was signed before the contents of the award were made known, and the signature of Tracy, we say, was fraudulently obtained. It surely cannot operate as a waiver of the provision in the bond that the award should be indented, for Tracy might well suppose, at that time, that it was indented. The want of learning and capacity to do business on the part of Tracy, made him a prey to the defendants, and every advantage could be taken of him.

V. The arbitrators exceeded their authority in awarding that Herrick should close the business, and receive and pay out the money. The submission did not go to that extent, and the award must be set aside on that account.

*Sawyer & Stevens*, and *B. F. Ayer*, for the defendants.

We contend that there is no ground whatever, either in law or equity, to set aside this award. The orator admits the entering into the agreement to refer, the making of the report or award by the arbitrators, and the execution by him of the agreement in writing upon the back of the award to abide the decision of the arbitrators. But he now seeks to invalidate the award, and the agreement to abide the decision, on several grounds.

He alleges that he did not understand and comprehend

the import and effect of all parts of the submission, and particularly that provision excluding attorneys, and that he was deceived in signing it. But this allegation, in common with most of the material allegations in the bill, rests solely upon the statement of the orator. There is no circumstance or testimony that goes to sustain him in this particular. We say further that the agreement is in the form usual in like cases; a form that occurs in every work of practice, and one constantly in use. Its utility may be doubted, but its occurrence in arbitration is a common and favorite matter.

The testimony taken by the orator shows him to be an intelligent business man; a man engaged in making and performing contracts. He admits that the submission was read to him in his hearing before he executed it, thereby showing that the ordinary course was adopted to make known its contents to him and his partners. He did not then complain of not comprehending or understanding it, and asked no explanation of it. He did not, during the progress of the hearing, ask for counsel or suggest that he wanted any assistance, except those persons who had assisted him in keeping his accounts, and their assistance and statements he had.

But even if he did not comprehend fully the import of this instrument, he cannot, upon any principle, ask to have the award set aside without showing some injury or damage sustained by him in consequence of the provision. Now we submit, with the utmost confidence, that there is nothing shown from which the court could draw an inference that such had been the case.

The orator next alleges that when he executed the agreement to refer, he thought that all the accounts of the copartnership had been kept by Herrick; and assumes that from his want of learning and ability he was unable to sustain his just claims before the arbitrators.

If this were true, it might have afforded him a plausible pretext for refusing to pursue the investigation after such

discovery, but can furnish no ground for the interference of the court after he has elected to settle it upon such proof as was in his power. But this allegation rests on his assertion alone; and is moreover met by the explicit denial on the part of Herrick that he was to keep the accounts of the partnership in the manner alleged by Tracy, or that any such agreement was ever entered into.

The orator contends further that the award is not the same as that of the arbitrators; that it was altered after it had been signed so as to increase the amount in McKew's favor. But this allegation is wholly and completely disproved by the answer of the defendants and the testimony of the referees.

A further ground urged for setting aside the award is, that there never was a hearing of the matters in difference before all the arbitrators. The history of the proceedings of the arbitration, however, as set forth in the answer of the defendants, and which is fully corroborated by the testimony of the referees, contradicts this allegation.

The orator also attempts to give the character of coercion to the recommendation to sign the agreement on the back of the award. The answer of the defendants and the testimony of the referees show this to have been merely a suggestion, which the parties, as sensible men, acquiesced in. This is no uncommon course, and is generally acceptable to everybody but litigants and their attorneys.

Another ground taken by the orator is, that the award of the arbitrators actually made in the premises, was not made pursuant to or in accordance with the terms of the submission; and that the same is unjust and unequal, and was unfairly obtained. It is sufficient to say of the alleged charge of unfairness, that the specific facts set forth in the bill itself, give no countenance to the charge. But if the allegations in the bill support the charge, it is utterly overthrown by the testimony of all the referees. The award

was made in accordance with and pursuant to the terms of submission. Moreover the objection is technical, and is waived by the subsequent agreement.

It is further contended that the award was not tripartite; was not indented; and was never ready to be delivered to each and every of the parties, and never was so delivered. To this we say that there is nothing in the terms of submission that requires the award to be made tripartite. The award was to be made ready to be delivered to the parties, and the subsequent agreement, after the award was made and published, between all the partners, was, that the original should be lodged with Pinkerton, and kept by him; and it was accordingly so done.

But the objection that it was not indented or tripartite, is entirely technical, and was waived by the agreement to abide the award. *Perkins* v. *Wing*, 10 Johns. Rep. 143. Besides, this is not a proceeding to set aside an award upon which proceedings at law have been commenced. The relief is sought on equitable grounds alone, and we apprehend that technical objections alone are not sufficient to invalidate these proceedings, in the absence of fraud.

The orator further contends that he forgot to lay before the arbitrators, claims and demands to the amount of $200. He is careful not to furnish us with any specification of what those claims were, or the nature of them. We totally deny the fact, and he furnishes no evidence to sustain it.

Now, we contend that this award cannot be set aside for any of the reasons alleged in the bill. Awards are not to be set aside, but for corruption or misbehavior, or for some great or palpable error, or gross mistake. *Mulder* v. *Cravat*, 2 Bay's Rep. 370; *Herrick* v. *Blair*, 1 Johns. Ch. Rep. 101; *Shepard* v. *Merrill*, 2 Johns. Ch. Rep. 276; 2 Story's Equity Jurisp. § 1450 and note; *Boston Water Power Co.* v. *Gray*, 6 Met. Rep. 131.

We say further, that great latitude has always been allowed in proceedings before referees, both as to the manner·

in which the hearing shall be conducted, the evidence received, and the law that shall govern them. *Johnson* v. *Noble*, 13 N. H. Rep. 286; *Hollingsworth* v. *Leiper*, 1 Dall. Rep. 161; *Patten* v. *Hunnewell*, 8 Greenl. Rep. 19.

Again, we say that the arbitrators did not exceed the submission, as contended by the orator. They clearly had the right to go to the extent to which they did. But if the court should be of opinion, which we think they will not be, that we are wrong in this, then we say that the award is good *pro tanto.* So far as it relates to every thing but the settlement of the business by Herrick, it must stand. Such is the undoubted doctrine of the books. *Banks* v. *Adams*, 10 Shepl. Rep. 259; *Caton* v. *McTavish*, 10 Gill & Johns. 192; *McBride* v. *Hagan*, 1 Wendell's Rep. 326; *Clement* v. *Durgin*, 1 Greenl. Rep. 300; *Gordon* v. *Tucker*, 6 Greenl. Rep. 247.

EASTMAN, J. Courts of equity will interfere and set aside an award of arbitrators, whenever such manifest and palpable injustice is done as to show fraud, misconduct or evident mistake on the part of the arbitrators. *Rand* v. *Redington*, 13 N. H. Rep. 72; 2 Story's Equity 675.

A court of law, also, will set aside a report in cases where a return is by law made to the court, if corruption, partiality, gross mistake or evident misconduct shall appear. *Bassett* v. *Harkness*, 9 N. H. Rep. 165.

But an award will not be set aside for subtle and technical exceptions; and all matters connected with it, will receive a fair and liberal construction. *Spofford* v. *Spofford*, 10 N. H. Rep. 254.

In *Johnson* v. *Noble*, 13 N. H. Rep. 290, *Woods*, Justice, says that the policy of the law is decidedly in favor of settlements by arbitrators, and their awards should be sustained whenever it can be done consistently with the rules of law.

Such is the law in this State; and the first question

which we shall consider is, was there any fraud, corruption, mistake or misconduct on the part of the arbitrators in this case, which will warrant us in setting aside the award?'

It is charged in the bill, and contended in the argument, that there never was a hearing by all the arbitrators upon the matters submitted, but that sometimes Hunt and sometimes Pinkerton each by himself heard the parties, and that Brown, the other arbitrator, never acted upon these matters. This allegation is fully denied by the defendants in their answers. The evidence in regard to it comes from the arbitrators. The submission, it will be recollected, was made September 5, 1849.

Hunt says that along the 1st of September, 1849, Pinkerton and himself and the parties came together and concluded for Hunt to examine the books and see what matters were in dispute, that they might the more readily decide on the case when they were all together. That along the close of the hearing they were all together, with all the parties, three or four different times, and that nothing in dispute was considered when the arbitrators were not all together. That on the last day of the hearing the arbitrators met in the forenoon, afternoon and evening.

Hunt says further that he spent several days with the parties in looking over their books, accounts and receipts, and in getting them together; that the object was to expedite matters and select out those that were in dispute; and this arrangement was assented to and approved by all the parties. That every thing which was in dispute was set aside for the consideration of all the arbitrators. That Tracy had Carleton and Fields, who had kept his books, to explain them as it became necessary. That at the last hearing all the matters and accounts that had been agreed upon were laid before all the arbitrators, and it was then agreed by the parties, all being present, that these should be allowed by the arbitrators and included in the award.

He says that the matters particularly in dispute between

the parties, were for keeping oxen and their labor, some tim-
ber, chains, horse teams and carts, and the personal services
of the parties.

Pinkerton states the matter fully as strongly for the de-
fendants as Hunt. He says that the books and vouchers
of each party were read over, item by item, in the presence
of the parties, to ascertain what was agreed to and what
was in dispute. That all the parties agreed to this course,
and after it was completed also agreed to the result of the
undisputed items. That no matter in dispute was ever
considered except when all the arbitrators were together.
That there was no unfairness, partiality or irregularity in the
award, or in obtaining it, and that everything offered by
the parties was fully heard and considered.

Brown says that by arrangement, the books and accounts
and vouchers of the parties were chiefly examined by the
other arbitrators, and got off in a situation to expedite the
business, so that they could look them over more readily.
That finally the arbitrators were all together five or six
times, and at the end he examined all the accounts and
books with the others. That all the parties had books and
papers there. That the accounts were all read over and
assented to by the parties, except the disputed matters.
That the disputed matters were considered when all were
present, and decided by all the arbitrators when they were
together. That the matters not in dispute were settled and
agreed upon by the parties as before stated; and that noth-
ing was included in the award except those matters agreed
to by the parties in the presence of all the arbitrators, or
settled by all the arbitrators when disputed.

Such is the testimony coming from the arbitrators; and
we think it entirely sustains the answers of the defendants.
Nothing, which could properly be denominated a hearing,
or which was in any way prejudicial to the interests of
either of the parties, took place when all of the arbitrators
were not present. The course pursued by Hunt and Pink-

erton might perhaps be termed an irregularity; but yet it was such an irregularity as the parties agreed to, and if objectionable, was fully waived by their subsequent action. An award, though defective on account of irregularity in the meeting of the referees, is made good by a subsequent appearance of the parties. *Dorman* v. *Turnpike Company*, 3 Watts' Rep. 126.

The bill further charges that the agreement to refer, includes an unusual provision, to wit : that the hearing should be without the intervention of attorneys ; and that the introduction of this clause was a fraud upon Tracy. The answers fully deny the allegation.

In regard to the fact, Pinkerton says that he wrote the agreement to refer, at the request of the parties. That the clause, " without the intervention of attorneys," was inserted at the suggestion of the parties themselves. That he does not know which of them first suggested it, and that it was agreed to before he knew anything of the arbitration. That Tracy made no complaint that he had no one to assist him in the hearing, and appeared to understand his rights and to manage them well.

Brown says that he does not know how the provision, " without the intervention of attorneys," came to be inserted in the submission. That during the hearing Tracy expressed no desire for the aid or assistance of counsel, nor did he, up to the time that the award was made known, express any dissatisfaction whatever as to the manner in which the business had been conducted before the arbitrators. That Tracy took an active part in the hearing, and asserted and maintained his claims in a like manner with the other parties, and had the appearance of an intelligent business man. Mr. Brown also adds that he knew Tracy was an intelligent business man before.

The testimony of Hunt is to the same purport; and the allegation of the bill in this respect is completely negatived by the proof.

The bill further alleges that after the award was made, an agreement to abide the decision of the arbitrators was signed by the parties; but that the orator did not know what it was when he signed it, but supposed it was something he must sign or subject himself to the penalty of the bond.

With regard to the agreement, the arbitrators testify, in substance, that they suggested that the agreement should be signed; that it was explained to the parties, and that they all understood it, agreed to it, and signed it voluntarily; and that nothing like compulsion was used, or deception practised.

The further charge in the bill that the award was altered by the arbitrators after it was signed and published by them, is entirely refuted by the testimony of the arbitrators. They all testify distinctly that nothing of the kind was done.

We have now gone over the principal matters relied upon in the bill as going to show corruption, dishonesty, misconduct or mistake in procuring the award. There are several other allegations, which, if sustained by proof, would tend to show an over-reaching by the defendants.

It is said that Tracy cannot read or write, and could not keep books, and that Herrick agreed to keep the books. Upon this point the evidence shows that Tracy is an illiterate man, but at the same time an active business man; that he had been in the habit of taking contracts on the railroad and for the corporations at Manchester, and that he had books kept for him in this business with the defendants. Herrick denies that he agreed to keep the books as alleged by Tracy, and there is no evidence to sustain the allegation.

It is also alleged that Tracy became so perplexed and disheartened, by reason of the protracted hearings and the difficulties attending the same, that he was quite incapable of understanding his rights or of asserting and defending them. The arbitrators, however, all of them, testify that he appeared to understand his rights and his case well; that

Tracy v. Herrick.

he was not confused, and made no complaints about the difficulties of the hearing.

Tracy further says that through mistake he failed to lay before the arbitrators his claims to the amount of two hundred dollars. This is denied by the answers, and no evidence is offered to sustain the allegation.

Upon a careful and minute examination of all the evidence tending to show unfairness, fraud or mistake, in the submission, hearing, award, or agreement to abide by the same, the conclusion, we think, is unavoidable, that the orator fails to sustain his bill upon any of these grounds.

But it is said in the argument that the orator does not rely solely upon the want of fairness in the trial before the arbitrators; that aside from that, he has a fatal exception to the award, which is, that it does not follow the submission. The counsel contends that the submission provides that the award shall be indented; tripartite; and that consequently it should be in the hands of all the parties; but in fact only one award was signed, and it could not therefore be tripartite and in the hands of each of the parties.

The clause in the submission which is relied upon as sustaining this view of the matter, is in the usual form, and provides that the award shall be made and set down in writing, indented under the hands and seals of the arbitrators, and ready to be delivered to the parties, &c. From the evidence, it appears that only one paper, embracing the award, was drawn and signed; but the arbitrators testify that it was the understanding between the parties after the award was made, that it should be left in the hands of one of the arbitrators for the benefit of all the parties.

We cannot, therefore, regard this objection as a substantial one. The award being in the hands of one of the arbitrators, can be produced, if necessary for legal investigation, on the requirement of either of the parties. It is in a situation to be available to each of them, either in a court of law or equity. And were the objection such as would

prevail in a court of law, it has been removed by the agreement of the parties that it should remain in the possession of one of the arbitrators for the benefit of all. Such agreement is a waiver of the strict provision of the submission that the award shall be indented.

It appears also from the evidence that a true copy of the award has been furnished to the orator at his request. Such is the testimony coming from the arbitrator with whom the award was left; and this, it would seem, is sufficient. Where sworn copies of an award are delivered to the parties and received without objection, it will be deemed a waiver of their right to receive the original award. *Sellock v. Adams*, 15 Johns. Rep. 197.

Had this been a report made by referees under a rule of court, or by submission under the statute, and returned to the common pleas, it could have been recommitted for revision and amendment, if it were necessary. *Bassett v. Harkness*, 9 N. H. Rep. 165; *Snyder v. Hoffman*, 1 Binn. Rep. 43; *Thompson v. Warder*, 4 Yeates 336; *Bowers v. Warrel*, 1 Browne's Rep. 170. In chancery, also, a bill to set aside a report will not be sustained, where the grounds assigned are such as would have been open to the party at law, by filing exceptions to the report. *Hurst v. Hurst*, 2 Wash. C. C. Rep. 127.

This objection, then, must be regarded as technical, and under the facts proved could not prevail in a court of law, much less should it succeed in a court of equity; and the court being of opinion that the award has been fairly and understandingly made, will endeavor to sustain it, so far as may be, against all technical exceptions. Such a course is well sanctioned by authority. *Underhill v. Van Cortlandt*, 2 Johns. Ch. Rep. 339; *Davy v. Farr*, 7 Cranch 171; *Todd v. Barlow*, 2 Johns. Ch. Rep. 551; *Brown v. Bellows*, 4 Pick. Rep. 192; *Herrick v. Blair and Blair*, 1 Johns. Ch. Rep. 101. The same principle is also to be found in the authorities before cited from our own reports. And were a

Tracy *v.* Herrick.

bill filed to enforce the award, the submission being between partners, it would be no sufficient answer that there had been no award according to the submission.

But a further objection is taken to the report. It is contended that the arbitrators have exceeded their authority in undertaking to decide that Herrick should receive from the corporation the money due, and pay it out to the creditors and parties.

Were this objection well founded in fact, it would not vitiate the award. The amounts due to the several parties are all definitely found; and this provision is simply as to the manner in which the business shall be closed up. An award embracing matters not within the submission, but so made that those actually submitted are decided and can be enforced, is void only so far as it exceeds the submission. *Chase* v. *Strain*, 15 N. H. Rep. 535; *Peters* v. *Peirce*, 8 Mass. Rep. 398; *Gordon* v. *Tucker*, 6 Greenl. Rep. 247; *Walker* v. *Merrill*, 1 Shepl. Rep. 173.

But we do not think that the arbitrators have exceeded their authority. The submission is broad, and was intended to cover the whole ground concerning the contract, and the settlement of the same; and accordingly it provides that the parties shall keep the award " concerning said contract and settlement." Should Herrick, upon whom the burden of the settlement rests, in any way act in bad faith in closing the business, this court could interfere and restrain him, so that the full purposes of the award might be carried out.

After a careful examination of the case, we are quite clear that the orator has failed to sustain his bill. It must therefore be dismissed, with costs.