# E. ADAMS *vs.* J. ADAMS.

A report of referees made under a rule of court, is, when presented for acceptance, open to every objection, whether the grounds of the objection appear on the face of the report or not.

The question, whether a particular demand was within the submission, is a question, the final decision of which belongs to the court.

It is a valid objection to an award, that the referees have taken into consideration matters not submitted to them, and founded their report in part upon such matters.

And if in such a case they award a gross sum, and do not state the grounds on which the award is founded particularly, so that the court may see what is

awarded on account of demands that are within the submission, the whole award is void.

*Where an award is vitiated by being founded in part on demands not submitted, but which one of the parties had improperly laid before the referees, the court will not recommit the case to the referees, in order that the report may be amended, on the motion of such party.*

Adams
*vs.*
Adams.

ASSUMPSIT. This action and all demands between the parties were submitted, by a rule of the court, to the determination of three persons, who made an award that the plaintiff recover of the defendant the sum of $402 44 damage, and costs of reference, taxed at $61 48.

The defendant objected to the award, that the referees had taken into consideration and decided matters which had not been submitted to them.

It appeared, by affidavits and papers filed in the case, that the parties were brothers : That the defendant, in the year 1807, gave to their father a promissory note for $280 : That the father died in the year 1825, having made his will, constituting John Clark his executor, and making these parties residuary legatees : and that the will had been duly proved and allowed.

The said executor never attempted to collect of the defendant the said note.

After the parties had entered into the rule by which this action and all demands between them were submitted to the referees, the plaintiff procured the said note from the executor, under pretence that he wished to have it examined by a particular individual, and a promise to return it immediately ; and without disclosing to the executor his real object in obtaining the note, laid it before the referees as one of the demands submitted to them under the rule.

The referees being of opinion that the agreement to submit all demands between the parties to arbitration was sufficient to take the note out of the statute of limitations, and that the plaintiff was equitably entitled to one half the amount of the note, allowed him that amount in their award.

*Porter,* for the defendant, moved the court to reject the report of the referees, and discharge the rule.

*C. H. Atherton,* and *Betton,* for the plaintiff. I. An award is a judgment, according to reason and conscience, and must be taken liberally, according to the intent of the arbitration, and not strictly, as other judgments are; and the award can only be explained by itself. An arbitrator is defined to be, Judex honorarius non lege datus sed ab iis qui litigant electus, qui totius rei habet potestatem ad arbitrandum not ut lege et stricto jure sed prout ipse æquum esse existimet. 1 *Dane's Digest* 258; *Kyd on Awards.*

The above principle is recognized in *Greenough* vs. *Rolfe & a.,* 4 *N. H. R.* 358. It is not necessary that claims considered by referees should be valid demands, in a court of law; nor claims, of which a court of equity could take cognizance. The "prout ipse æquum esse existimet" extends further than remedies in courts of law or equity.

II. As to the *æquum,* in this case, of which the referees were the judges.

The parties were joint legatees of their father. James owed the estate a certain sum of money. The estate was fully settled, except this demand against James, the defendant. The executor refused to sue the defendant for the money, from a belief that it was not recoverable, by reason of the statute of limitations. The plaintiff, on the trial before the referees, claimed to be allowed one half the amount of the note, as so much money held by the defendant, which in equity and good conscience belonged to the plaintiff. Did it not belong to him? Did not honor, equity, justice and good conscience, require that the one half the note should be allowed to the plaintiff? The referees thought it ought to be allowed, and they were the judges. What had the executor to do with it? The legal remedy for the money was in him. But he would have been only a trustee of the money, when recovered; the trustee of the plaintiff as to

one half,—just what the referees awarded. The case then is,—the *cestui que trust,* the party in interest, is permitted to recover his share of a just debt, which the trustee refused to collect. There is no injustice in this—nothing opposed to it, but legal forms. Where there are no courts of equity, or where the limits of jurisdiction between them and the courts of law are not settled, it seems to us that even a court of law would take cognizance of a claim so evidently just.

III. An award may be good in part and void in part. And the court is to judge of this from what appears on the face of the award. 2 *Saunders* 293, *Pope* vs. *Brett ;* 14 *Mass. R.* 252, *Phelps* vs. *Goodman ;* 8 *East* 445, *Ingram* vs. *Milner.*

If the court enter into the merits of the award, good on the face of it, by evidence *de hors,* that evidence becomes a part of the award ; and if the party will release that part which is bad, he may have judgment for that which is good.

IV. Courts do not interfere with awards, unless the objection appears on the face of them, not even to decide whether the award is within the submission. Parol evidence is not admissible, to impeach an award legal on the face of it. Upon such an award the court interfere only on the ground of partiality and corruption. 2 *John.* 62, *Newland* vs. *Douglas ;* 3 *ditto,* 367, *Barlow* vs. *Todd ;* 10 *ditto,* 143, *Perkins* vs. *Wing ;* 9 *John.* 212 and 38 ; 1 *Saunders* 327, *a, note* 5 ; 2 *Burrows* 702.

If courts go behind the award, and form their own judgment of what was within the submission, and what not, where will they draw the line ? Not by claims cognizable in a court of law, nor by claims cognizable in a court of equity, for the powers of an arbitrator extend beyond these. They must take on themselves to decide what the arbitrator, *ex æquo et bono,* ought to have done, or not to have done. They may come to a different result ; but it seems to us,

the parties on this subject are bound to abide the decision of the judges of their own choosing.

V. The parties may be considered as made partners by the will, and this claim as a bill in equity by one against the other to account. No adjustment between them can affect the right of the executor to the money, in whosesoever hands it may be, if wanted to pay any claim against the estate.

VI. In case the court shall be of opinion that judgment cannot be rendered upon the report, we move that the case may be re-committed to the referees, to amend their award.

*Porter,* for the defendant. It may be conceded, so far as this case is concerned, that referees may decide according to equity and good conscience, as well as according to law, provided they keep within the scope of their authority. They derive their authority from the agreement of the parties, and have no power except what that confers.

Whether any particular matter does or does not come within the terms of the agreement or submission, cannot be one of the matters contemplated by the parties to be settled by the arbitrators. The agreement is to submit subsisting controversies; but there is not, and cannot be, from the nature of the case, a subsisting controversy at the time of the submission as to what is submitted. If such dispute arises at all, it must be subsequent to the submission.

It is well settled that an award must be confined to the subject matter submitted. 13 *Johns.* 27, *Solomons* vs. *McKinstry;* 1 *Strange* 116; 16 *Johns.* 227, *Macomb* vs. *Wilbur;* 2 *N. H. R.* 429, *Thrasher* vs. *Haynes.*

We contend that the referees in this case exceeded their authority.

It is asked, on the other side, where will the court draw the line, if they enter into the enquiry whether a particular matter is submitted? I answer, precisely where the parties have agreed it shall be drawn. An agreement of this sort, like all other agreements, is to be construed so as to effect the

intention of the parties. But who is to judge? Not the referees surely, in the last resort, for the parties have not so agreed. It follows, then, that this duty devolves on the courts constituted by law.

The fallacy of the argument on the other side with respect to this point lies in adroitly blending two separate and distinct matters, and applying rules to both which are applicable to one and not the other. In acting upon the matters submitted, it may be proper that the referees should apply the rules of law or of equity, or exercise that other power, paramount to both law and equity, which counsel seem to think they possess. And why? Because the parties have so agreed. So far we may concede that they shall take the broadest ground presented by considerations arising *ex æquo et bono.*

But how does it follow that any such latitude is to be allowed in settling the question, as to what is or is not submitted? And how does it follow that courts, in settling this question according to law, need enter at all upon the consideration of the other question, as to what should be the decision *ex æquo et bono* on any matter of which the referees may have taken cognizance, whether actually submitted or not? On any matter submitted, the referees may act to the full extent of their power: but on matters not submitted, whatever they do is usurpation,—an abuse of equity.

It is further contended, that in case the referees have transcended their authority we cannot avail ourselves of the objection, because it does not appear on the face of the award.

I understand the practice to have been uniform to admit extrinsic evidence on questions touching the validity of awards. In cases where the submission and award are general, it is not easy to see how else such questions can be raised. They were so raised, 2 *N. H. R.* 429; and 4 *N. H. R.* 358.

In England, a defect apparent on the face of the award

is good ground for opposing at any time a motion for an attachment to enforce performance. A defect not thus apparent, but shown by extrinsic evidence, is good ground for a motion, if made in season, to set aside an award. 6 *D. & E.* 161, *Holland* vs. *Brooks ;* 7 *D. & E.* 74.

So far as the cases cited on the other side tend to prove that the court cannot examine the doings of the referees, for the purpose of impeaching their judgment on the merits of the case, they furnish no ground for dispute. It is enough to say, that is not the matter at present in issue. If any of them go so far as to assert that the court cannot, on extrinsic evidence, examine the doings of the referees for any purpose except to determine the question of fraud or misconduct on their part, I should still say the ground on which we stand is unshaken. The usurpation of power by referees would always be sufficient evidence of misconduct, and, under some circumstances, would support the allegation of fraud and corruption.

It is said, that an award may be good in part and void in part, and so much as is void be rejected, and the residue established. This is true where the different matters or parts of the award have been set out separately, and the part that is good is in no way connected with the part that is bad. But when a gross sum is awarded, and part is void, the award must be set aside altogether.

RICHARDSON, C. J., delivered the opinion of the court.

It is insisted, in this case, that parol evidence is inadmissible to impeach an award legal on the face of it, except for partiality or corruption in the referees.

But the English cases cited by counsel do not sustain the broad ground taken.

The case of *Lucas* vs. *Wilson*, 2 *Burrows* 702, only decides that upon a motion for an attachment to enforce the performance of an award, the court will not enter at all into the merits of the matter referred, but only take into consid-

eration such legal objections as appear upon the face of the award, and such objections as go to the misbehavior of the arbitrators.

There are other cases in which the same rule has been adopted. 2 *Tidd's Prac.* 764; 7 *D. & E.* 73, *Pedley* vs. *Goddard*; 6 *ditto* 161, *Holland* vs. *Brooks*; 7 *East* 81, *Randall* vs. *Randall*; 3 *Bingham* 167, *Brazier* vs. *Bryant.*

But upon an application to a court in England to set aside an award, if the application be in season, every ground of relief in equity against an award is equally open in a court of law. 2 *Tidd's Prac.* 762; 3 *Burrows* 1258; *Caldwell on Arbitration* 176—183; *Kyd on Awards* 342.

Thus an award may be set aside, if the arbitrator, intending to decide according to law, mistake the law, although the matter does not appear on the face of the award. 3 *East* 18, *Kent* vs. *Elstob*; 8 *Bingham* 86, *Gingell* vs. *Glascock.*

So where it was shown that the umpire who decided the cause was chosen by lot, the award was set aside. 3 *B. & Adolphus* 428, *Ford* vs. *Jones*; 9 *B. & C.* 624; 3 *B. & C.* 407.

And the question, whether an arbitrator has exceeded his authority, may be settled on an application to set the award aside. 5 *Dawland and Ryland* 317, *Morley* vs. *Newman*; 1 *Broderip and Bingham* 80, *Bonner* vs. *Liddell.*

Where arbitrators omitted to take into consideration a demand laid before them by one party, and admitted by the other on the ground it was not a matter in dispute, the award was set aside on an application to the court for the purpose. 1 *B. & Adolphus* 723, *Robson* vs. *Railston.*

In many cases, relief against an unjust award is to be sought in a court of equity. *Caldwell on Arbitration,* 183 —189; *Kyd on Awards* 327.

The cases of *Perkins* vs. *Wing,* 10 *Johnson* 143, and

*Barlow* vs. *Todd,* 3 *Johns.* 367, do not apply in this case. They were suits on arbitration bonds.

In *Newland* vs. *Douglas,* 2 *John.* 62, it was only decided that an action does not lie to correct a mistake made by referees.

In *Cranston* vs. *The Executors of Kenny,* 9 *John.* 212, it was decided that where a cause is submitted to arbitration without a rule of court, the court will not interfere to set aside the award.

In New-York, relief against an unjust award may be had in a court of equity. 17 *Johns.* 405 ; 2 *Johns. C. R.* 339.

In Massachusetts, when awards are made under rules of court, they are open to all legal objections, and may be set aside, or the cause be recommitted to the referees, as justice may seem to require. 6 *Mass. R.* 70, *Boardman* vs. *England ;* 10 *Pickering* 348, *Bigelow* vs. *Newhall ;* 6 *Greenleaf* 21, *North Yarmouth* vs. *Cumberland.*

In this state, awards under rules of court have uniformly been considered as open to every legal exception, whether the grounds of the exception appeared upon the face of the report or not. And no case is known in which it was ever held that they could not be impeached by extrinsic evidence. Indeed, it would be strange if they could not be so impeached in this state ; for there is no other mode in this state in which relief against an illegal and unjust award can be obtained. The law on this subject must now be considered to be settled. 4 *N. H. R.* 357, *Greenough* vs. *Rolfe.*

In this case, the parties agreed to submit the action and all demands to arbitrators. This must be understood to be a submission of all demands between the parties, and nothing more. It must also be understood to be a submission only of demands directly between the parties, and cannot be construed to embrace a contingent interest which one may have had in a demand which a third person may have had against the other. The agreement to refer, like all other agree-

ments, is to have a reasonable construction, so as to give effect to the intention of the parties ; and nothing is to be construed as within the agreement which cannot fairly be presumed to have been within the intent of the parties.

The note which the plaintiff laid before the referees, and one half of which they allowed him, was a demand between the executor and the defendant. It appears that the agreement to refer the case was made as early as March, 1833, and that the plaintiff did not obtain even possession of the note until the 20th of December, 1833. He had, then, no demand at the time of the submission against the defendant by reason of the note. His claim, whatever it might have been on account of the note, was against the executor. There is, then, no ground to suppose that the note could have been intended to be submitted to the arbitrators in this case.

It is said that the claim of the plaintiff to one half of the note, is just and equitable. This may be so. But in the first place, his claim is not against this defendant directly. He has no demand on this account against the defendant except through the executor. The equity of the claim cannot change its nature in this respect. In the next place, there is a wide difference between a case where referees undertake to decide equitably a claim submitted to them, and a case where they undertake to decide a claim not submitted to them, merely because it is equitable. Neither law nor equity can give them authority to decide a claim not submitted. They derive their authority from the agreement of the parties, and not from the justice or equity of the claims laid before them.

The award is then founded, in part at least, upon demands not submitted to the referees.

But this is not all. The note was a very stale claim. It was given twenty-five years before the time of the hearing before the referees. It was apparently barred by the statute of limitations. And it does not appear that there was

any thing to take it out of the statute except the agreement of the parties to this suit to refer all demands between them. And this was held to have that effect, by the arbitrators. It is altogether incredible that they could have so held, unless they supposed that this note had been submitted by the parties. They could not so have held, unless they supposed that the defendant clearly intended to submit the note to their decision. They not only then mistook the extent of their authority, but made that mistake the ground of their decision upon the merits of the claim.

It is, then, clear that the award is, to a very considerable extent, void.

But it is said that an award may be void in part, and valid for the residue. This is true in some cases. If in this case the referees had stated in their award what sum they allowed on account of the note, and what sum they allowed on other accounts, we might have rejected the sum allowed for the note, and have given judgment for the residue. But they have awarded a gross sum, and what they awarded on account of the note does not appear on the face of their award. We cannot alter or amend the report; and the judgment we render must be founded upon what appears on the face of the report. This is not a case then where a part may be rejected, and judgment be rendered on the residue.

It is moved that the case may be recommitted to the referees.

It is very common to send cases back to referees, where justice seems to require such a course. 6 *Mass. R.* 70; 4 *Green.* 459; 9 *Mass. R.* 325; 2 *D. & E.* 781.

But the question whether a case shall be sent back, is always to be settled in the exercise of a sound discretion. It is by no means a matter of course. And this is not a case which in our opinion ought to be sent back to the referees.

There is not the slightest reason to believe that the de-

fendant ever intended to submit the note to the decision of these referees. Indeed, it is highly improbable that he ever thought of such a course. Yet it appears from the affidavits filed in the cause, that the plaintiff, after the agreement to refer was made, went to the executor, and without disclosing to him that the note was wanted to lay before the referees, but holding out that it was wanted for another purpose, and promising to return it in a short time, obtained the loan of the note; and having thus obtained the note, he laid it before the referees.

This course, viewed in the most favorable light, cannot be considered otherwise than a very unfair attempt to gain an advantage over the defendant. And as the plaintiff has rendered void the award by a course which he ought not to have pursued, we do him no injustice by leaving him to take the consequences of his own unfair conduct. It is not a case in which we can, in the exercise of a sound discretion, interfere.

*The report is rejected, and the rule discharged.*