## FURBER v. CHAMBERLAIN.

If the agent of a party enter into a submission of what shall be received by a widow as an annual payment for the use of her dower in premises, instead of having the same set off to her, and she afterwards receives payments according to the award, she will be bound by the award, notwithstanding neither she nor her agent ever executed any written agreement in regard to the matter.

Where the matter submitted to referees is reduced to writing, parol evidence cannot be received to show what was submitted; and the court must judge from the submission, and award what was decided between the parties.

The widow of C. recovered judgment of dower against F. in a certain farm, which had been warranted to F. by B.; and subsequently the agent of the widow entered into a submission with B., by which it was referred to arbitrators to determine what sum annually should be paid to the widow by B., instead of dower being assigned to her. An award was made fixing the sum, and a bond given by B. to pay the same, but after several payments, B. became insolvent, and neglected to pay further. The widow never discharged the judgment, or signed any release of her dower. *Held,* that she was bound by the award, so long as payments were made, but upon failure of payments she might institute proceedings to obtain possession of the land—that the true meaning of the submission was, that the annual payments should be received, not in lieu and discharge of her dower in the land, but in the nature of rent for its use.

In Equity. The bill sets forth that on the 4th day of December, 1819, Ephraim Chamberlain, who was the husband of Mercy Chamberlain, the defendant, was seized and possessed of a certain farm in Alton, and on that day sold and conveyed the same to one Sarah Coffin. That Sarah Coffin afterwards married one Daniel Burleigh, and that Burleigh, and his wife, Sarah, in her right, sold and conveyed the same premises, on the 8th day of March, 1837, by warrantee deed, to Richard Furber, the complainant. That subsequently to the last conveyance Ephraim Chamberlain died. That afterwards, on the 31st day of May, 1841, Mercy Chamberlain, the defendant, demanded of the complainant her dower in the farm, and required him to set out and assign the same to her. That on the 5th day of July, 1841, the dower not having been assigned or set out, the defendant commenced a suit against the complainant for the re-

covery of the same. That after the commencement of the suit, and before the entry of the action in court, the complainant notified Burleigh and wife, his warrantors, of the bringing of the suit, and they assumed the defence of the same; but at the February term of the common pleas of Belknap county, 1842, judgment as of dower was rendered against the complainant, and also for $50 damages for the detention thereof, and for $12,91 costs of suit; and that execution was issued upon the judgment.

The bill further sets forth that after the rendition of said judgment, and before the 14th day of April, 1842, an agreement was made between Burleigh and wife on the one part, and Mercy Chamberlain, the defendant, on the other, by which the dower of the defendant in the premises was not to be assigned, and that instead thereof it was agreed to leave it to referees to decide what sum should be paid annually to the defendant in lieu of her dower; that the complainant was to be cleared and released from all liability in the matter, and that the defendant was to take such sum as the arbitrators should award in full of her claim for dower, and that the defendant should take the bond of Burleigh and wife as security for the payment of such award.

That Burleigh and wife, on the 14th day of April, 1842, made and executed to the defendant a bond, in the penal sum of $500, conditioned for the payment of the award; that the arbitrators gave notice of the time and place of hearing; that the parties appeared by their agents and attorneys and were fully heard on all matters and things submitted for consideration, on the 14th of April, 1842, and that the arbitrators awarded that the defendant should recover of Burleigh and wife the sum of $25 annually, during the natural life of the defendant. That the award was made and delivered to the parties and indorsed by the arbitrators on the bond; and the defendant, as well as Burleigh and wife, assented and submitted thereto. That on the-same day Burleigh paid to the defendant the $50 damages, and the

costs, in satisfaction of the execution recovered by the defendant.

The bill then sets forth that the defendant accepted the bond and award in full satisfaction of her claim for dower in the premises. That at the time of the arbitration it was intended and agreed to make and execute such writings as would carry into effect the agreements, but that by mistake, misfortune and accident, no release of dower was at the time, or since has been, made by the defendant to the complainant.

The bill further alleges that several of the annual instalments due the defendant, agreeably to the bond and award, have been paid by Burleigh and wife; that the defendant caused an action to be commenced on the bond against Burleigh, and that judgment in her favor has been rendered against Burleigh, and an execution issued thereon, but that Burleigh is now destitute of property, and for the want thereof execution has never been satisfied.

The bill then charges that notwithstanding the facts and agreements set forth therein, the defendant has sued out a writ against the complainant, reciting the judgment obtained against him for the dower, and requiring him to show cause why she should not have execution against him for the seizin and possession of the same.

The bill prays that the defendant be ordered to execute and deliver to the complainant a full and perfect release and discharge of all her claim to dower in the premises, pursuant to the agreement between the parties, and that she be enjoined from proceeding in her suit for the possession of the dower; and for general relief.

The defendant in her answers—there being two, the first having been excepted to—admits, in substance, that Ephraim Chamberlain, her husband, conveyed the farm to Sarah Coffin, who intermarried with Daniel Burleigh, and that Burleigh and wife, in right of the wife, conveyed to the complainant as is set forth in the bill. That her husband,

Ephraim Chamberlain, afterwards died, and she commenced a suit against Furber, the complainant, to recover her dower. That Burleigh and wife, Furber's grantors, upon notice from him, assumed the defence of that suit: that judgment was recovered in that suit against Furber, and execution issued for the dower, and also $50 damages for the detention, and $12,91 costs; and that Burleigh and wife paid the damages and costs to this defendant.

The answers further admit that Burleigh and wife executed a bond to the defendant for a reference; that a hearing was had by the arbitrators named therein; that several instalments have been paid by Burleigh and wife, according to the award; that the bond has been sued, judgment obtained thereon, execution issued, and that the same remains unsatisfied. And that a *scire facias* has been sued out and the action entered in court to revive the judgment for dower obtained against the complainant.

But the defendant denies that she ever made any agreement other than what is set forth in the bond. She avers that she never accepted the bond or award, or either of them, in full satisfaction for her claim for dower in the premises, and never intended or agreed with any one to release her right of dower in any way whatever; and that she never agreed at any time to make and execute any writings to carry into effect any such agreement. That the bond and award were to be, not in lieu of her dower in the premises, but the amount which she was to receive was to be instead of the occupation of the premises by her; and that so long as the annual payments were made she was content, but that several instalments are now due, and the bond cannot be enforced or the instalments collected. Such is the substance of the answers.

The complainant replied, denying the material allegations of the answers; and a hearing was had on the bill, answers and evidence.

Samuel Tilton, Esquire, a witness for the complainant,

testified that he was called upon to act as referee in a controversy between Daniel Burleigh and wife, and the defendant, Mercy Chamberlain; that he understood the complainant, Richard Furber, had an interest in the matter. It was in the spring of 1841 or '42; that the referees were William Badger, Joseph Boody, and himself. That the hearing was had on the premises in Alton, at the house of the complainant, Furber, who then occupied the farm. That it was his impression that the referees were called upon to decide what Burleigh and wife should pay Mrs. Chamberlain yearly instead of setting off her dower, and that, as he understood it, Burleigh and wife were to pay it.

That he did not distinctly recollect whether or not Furber was to be cleared from all liability in the matter. It was his understanding that this was to take the incumbrance from the place. Furber was to be exonerated from the annuity, and Mrs. Chamberlain was to take Burleigh and wife as paymasters of the $25 a year. That Burleigh and wife gave to Mrs. Chamberlain a bond at that time. That an award was made by the referees, which was, that Burleigh and wife should pay Mrs. Chamberlain $25 a year during her natural life, instead of her dower. That Mrs. Chamberlain was not present at the hearing before the referees, and the witness never saw her at any time. That the bond was made before the award, and it was his impression that it covered all controversies which were submitted to the referees for their decision.

Joseph Boody, Esquire, another of the referees, testified on the part of the complainant, that he was called upon by John Davis, the brother of Mrs. Chamberlain, who acted as her agent, to sit as referee. That the hearing was had on the 14th day of April, 1842. That the matter submitted to them was, for them to say what Mrs. Chamberlain should have, annually, in lieu of her dower in the farm, then owned and occupied by the complainant, Furber. That the referees made an award, and fixed the sum at $25, to be paid

---

---

annually by Burleigh and wife, and that Furber was to be cleared from all further claim for dower in the premises. That Furber did not take any part in the proceedings before the referees. That the award was made on a bond given to Mrs. Chamberlain by Burleigh and wife.

Asa P. Cate, Esquire, another witness for the complainant, testified that he was counsel for Furber in the original action brought by Mrs. Chamberlain for her dower, and that he was employed by Burleigh. That after judgment was obtained against Furber, the matter was referred to William Badger, Samuel Tilton and Joseph Boody. That the matter referred, according to his recollection, was how much money Mrs. Chamberlain should have, annually, instead of having her dower in the land set off; the sum to be paid by Burleigh and wife.

The witness further testified that his recollection was that the reference was to be in full for Mrs. Chamberlain's claim for dower in the premises; that his impression further was, that Furber was not to be liable. That a bond was given by Burleigh and wife to Mrs. Chamberlain, and that the award was made upon the bond. That Mrs. Chamberlain was not present at the hearing, but that a Mr. Davis acted as agent for her.

Mr. Daniel Burleigh, another witness for the complainant, and the person referred to as having signed the bond, testified that he was notified of the original suit of Mrs. Chamberlain against Furber for the dower, and employed counsel to defend it; that judgment was recovered for the dower, and that her claim for the same was settled by her taking a bond from himself and wife for the payment of $25 a year during her life. That it was left to the referees to say what the sum should be. That he made the agreement to leave it to the referees with John Davis, who acted as agent for Mrs. Chamberlain. That it was understood by himself and all who had anything to do with it, as he supposed, that the sum of $25 annually, as awarded by the referees, was to be

Furber v. Chamberlain.

in full for her claim for dower in the premises. That it was agreed between him and Davis that Furber was to be cleared from all liability and claim for dower; and that he and his wife gave to Mrs. Chamberlain a bond to secure to her the payment of such sum as the referees should award, and that he has made four or five payments on the bond.

He further testified that Mrs. Chamberlain never said anything to him about signing the bond; that her brother, Davis, who acted as her agent, requested it. That Mrs. Chamberlain was not present at the reference.

All of the testimony of the witnesses which tended to vary the terms of the bond or award was objected to at the caption before the commissioner, who took the evidence.

Mr. John Davis, a witness for the defendant, testified that Mrs. Chamberlain is his sister, and she requested him to assist her in obtaining her dower. That the suit was commenced against Furber for the same, and judgment recovered and execution issued. That afterwards Burleigh came to his house, and said he supposed he should have to pay the bill, as he sold the farm to Furber. He asked the witness if he, as agent of Mrs. Chamberlain, would consent to refer it to referees to say whether she should have the money or the land; witness told him that he had had some conversation with her, and she would rather have the money; that they then had some conversation about referring it, and finally agreed upon the referees. That the questions submitted to the referees were for them to say how much money she should have, yearly, instead of having her dower set off in the land. That this was all that was submitted, as he recollected it. That the referees awarded her $25 a year, from that date during her natural life, and a bond was given for the payment of that sum, signed by Burleigh and wife. That he did not make any agreement with Furber or any one else, that the award should clear Furber from all further claim for dower. That he had no authority to make such agreement. That all the authority that he had from Mrs.

Chamberlain in the business was verbal.   That he took the bond at the time of the reference.   That payments have been made upon it by Burleigh, and some of them through Furber; that the money received was paid to Mrs. Chamberlain by the witness.

The bond was as follows:

" Know all men by these presents that we, Daniel Burleigh of Sanbornton, and Sarah, his wife, are held and stand firmly bound and obliged unto Mercy Chamberlain of Gilmanton, in the sum of five hundred dollars, to the payment of which sum well and truly to be made to said Mercy Chamberlain, her heirs, executors, administrators or assigns, we bind ourselves, our heirs, executors and administrators firmly by these presents.   Signed with our hands and sealed with our seals, this 14th day of April, A. D. 1842.

The condition of this obligation is such, that whereas there is a controversy about the amount that ought to be paid by said Burleigh and wife instead of dower being assigned in a certain farm in Alton, in said county of Belknap, to which dower said Mercy has a right, the said farm being now occupied by Richard Furber, and it being mutually agreed to submit that question to the determination of Hon. William Badger, Samuel Tilton and Joseph Boody, it being understood that said arbitrators shall determine how much shall be paid annually to said Mercy, subsequent to a certain judgment rendered in favor of said Mercy against said Furber for said dower, and that the cost of this arbitrament shall be paid by said Burleigh and wife.

Now, therefore, if said Burleigh and wife shall stand to and abide by the award of said arbitrators, and shall pay or cause to be paid unto said Mercy such sum annually as the said arbitrators shall award, then this obligation shall be null and void, otherwise to be and remain in full force."

The bond was duly signed and witnessed.

On the bond was this award, signed by all the arbitrators, viz:

" We, William Badger, Samuel Tilton and Joseph Boo-
dy, the arbitrators named in the annexed bond, having given
the parties due notice of the time and place of hearing, and
having all heard, examined and considered the allegations
and evidences of both parties, do award, that the said Mer-
cy Chamberlain recover of the said Daniel Burleigh and
Sarah, his wife, annually, the sum of twenty-five dollars,
during the said Mercy's natural life, to commence at this
date. April 14th, 1842."

*Bell* and *Vaughan,* for the orator.

The judgment in the writ of dower, recovered by Mrs.
Chamberlain against Furber, was satisfied, and her right of
dower barred by an acceptance of the bond of Burleigh and
wife.

That such was the agreement is shown by the nature of
the transaction itself, the principal object of which was an
adjustment of Mrs. Chamberlain's right of dower by Bur-
leigh, in such a manner as to exonerate Furber, to whom
they had warranted the title of the land, and also by the
evidence of the referees, and particularly of J. Boody. They
are confirmed by the testimony of Mr. Cate, and of Bur-
leigh. Whether John Davis had actual authority or not to
make such an arrangement, Mrs. Chamberlain was bound by
what he, as her accredited agent, did upon the subject.

In equity dower will be regarded as barred by a collat-
eral satisfaction without a release. 2 Eq. Cas. Abr. 387,
389; 3 Atk. Rep. 8, 610; Com. Dig. Chancery D. 2, 3, E.
2; 4 Kent's Com. 55; *Corbet* v. *Corbet,* 2 S. & S. 612;
*McCartee* v. *Teller,* 2 Paige, 511.

This is the doctrine in the case of jointures and settle-
ments made before and during coverture, but the present
case is stronger for the defendant, for the compensation was
made and accepted after the coverture had ceased. A re-
lease in such a case is not necessary even at law, where the
widow accepts bequests or other provisions in satisfaction

of her dower. 4 Dall. 300 ; *Jackson* v. *Churchill,* 7 Cow. 287 ; *Allen* v. *Pray,* 3 Fairfield, 138 ; *Shotwell* v. *Sedman,* 3 Ham. 5 ; *Simpson's Appeal,* 1 Barr, 199 ; *Nesmith* v. *Dinsmore,* Rockingham, December term, 1845.

The obligors in the bond were solvent at the time of its execution, and paid the annual instalments for many years. The orator's remedy upon his contract of warranty has become worthless in consequence of the present insolvency of Burleigh, and of the decease of his wife.

The defendant voluntarily accepted the bond as a substitute for her claim against Furber for dower. See *Woodward* v. *Miles,* 4 Foster's Rep. 289.

*N. & G. N. Eastman,* for the defendant.

The complainant attempts by his bill to obtain a perpetual injunction against our *scire facias* to revive the judgment obtained in February, 1842; and chiefly upon the ground that that judgment was satisfied by the reference and award made in April following. He contends that the award was a complete satisfaction for our claim of dower in the farm, and an entire discharge of Furber. Now the correctness of this position we deny, because—

1st. No such agreement was ever made. The complainant's evidence does not make it out; and ours distinctly rebuts it.

2d. If there had been any such agreement, in order to be legally binding on the parties, it should have been in writing, and should have been signed by Mrs. Chamberlain and Furber, or by their legally constituted agents. *Nelson* v. *Sanborn,* 2 N. H. Rep. 414 ; Comp. Stat. 459, § 9.

3d. The bond was not binding on Sarah Burleigh, she being *feme covert,* at the time she signed it. See *Burleigh* v. *Coffin,* 2 Foster's Rep. 118, 122, and authorities cited. We suggest, also, that the bond was worthless, so far as Daniel Burleigh was concerned, he being at the time of its

execution and ever since, insolvent. We bespeak for this old lady, eighty-three years of age, a speedy decision.

EASTMAN, J. The judgment recovered against the complainant by the defendant in February, 1842, not having been reversed, settled the question of the defendant's right to dower in the farm. It was no longer a contingent matter, dependent upon the life of any one; nor a doubtful matter, resting upon the uncertain issue of a contested suit at law. All that remained for the defendant to do, after the judgment, in order to enjoy her rights, was to have the dower assigned and set off to her by the officer. Rev. Stat. ch. 205, §§ 5, 6. Her title to dower in the premises was settled.

Here, then, was a right in real estate determined and fixed; and which could not be parted with, except by clear and unequivocal legal acts. And the question is, was what was done, as disclosed by the bill, answer and evidence, a relinquishment by the defendant of all right in the premises as acquired by the judgment? Ought she to be estopped from setting up any claim to the land held by virtue of that judgment?

On the 14th of April, 1842, a reference was entered into between Daniel Burleigh and wife, who were the complainant's grantors and warrantors of the premises, on the one part, and John Davis, as agent of the defendant on the other part, in regard to the defendant's rights; a bond was executed by Burleigh and wife, and an award was made; and the bill charges that the defendant accepted the same in full satisfaction of her claim for dower in the premises; and that at the time of the arbitration it was agreed to make and execute such writings as would carry into effect the agreements, but that by mistake, misfortune and accident, no release of dower was then or has since been made by the defendant to the complainant. This agreement to execute a release of dower is explicitly denied by the answer, and the evidence does not sustain the allegations of the bill in

this respect. This is an important feature in the case, and the prayer of the bill is directed to this point, that the defendant be required to execute a release of her rights. But the complainant fails to sustain himself in this particular. He fails to show any agreement by Mrs. Chamberlain or her agent to execute a release, and if he can succeed with his bill, it must be because the acts of the defendant, in April, 1842, and since, amount to a relinquishment of her rights in the land.

What, then, was done by the defendant on the 14th day of April, 1842, and subsequently, which could bar her rights and cause us to issue a perpetual injunction against her *scire facias* now pending in the common pleas? As before suggested, a bond was executed by Burleigh and wife to the defendant, of the character and in the terms set forth in the evidence. About this there is no controversy. A hearing was had by the referees, and an award made; and the defendant acquiesced in the award so long as payments were made according to its requirements. Now, although the defendant never signed any agreement to refer the matter, nor her agent for her, and in fact signed no papers whatever, yet we think that her subsequent receipt of the twenty-five dollars a year, according to the award, was an acquiescence in what was done, and binds her to the submission and award.

What, then, was submitted, and what was the award? The complainant attempts to show by parol evidence that the referees were to decide what Mrs. Chamberlain should receive in full discharge of all her rights in the premises, and of all claim upon Furber for dower; and the testimony of his highly respectable witnesses tends to sustain him in this position. But, on the other hand, Davis testifies that such was not his understanding of the matter, and that he had no authority to make any such agreement. It is to be considered, also, that several years have elapsed since the transaction took place, and allowance must be made for the

uncertainty of memory at this distance of time. It would certainly seem a little unusual that the judgment for dower should not at the time have been discharged, or some release or writing made, showing that the award was to be in full of the defendant's rights, if the complainant's position is correct. The submission, also, does not appear to have been between Furber and Chamberlain, but between Burleigh and Chamberlain, and hence the greater propriety and necessity of having the judgment against Furber discharged, or some release or receipt executed to him, if the award was to be in full discharge of the dower. But we do not feel ourselves called upon to pass upon the weight of this testimony, because it is very apparent to us, that the submission, whatever it was, was embraced in the bond; and being reduced to writing, it is not competent to vary its terms by parol evidence. An award may be impeached for various reasons; as if it is founded upon matters not submitted, or exceed the submission. *Adams* v. *Adams*, 8 N. H. Rep. 82; *Chase* v. *Strain*, 15 N. H. Rep. 535; 10 Mass. Rep. 445; 4 Mass. Rep. 448. Or for corruption, fraud, partiality or evident mistake of the arbitrators. *Bassett* v. *Harkness*, 9 N. H. Rep. 164; *Rand* v. *Redington*, 13 N. H. Rep. 72; *Carey* v. *Wilcox*, 6 N. H. Rep. 180. But where an award is fairly made, in pursuance of a submission, the determination of the arbitrators is conclusive upon the parties, even upon questions touching real estate. *Jones* v. *Boston Mill Corporation*, 6 Pick. 148; 4 Pick. 507; *Shepherd* v. *Ryers*, 15 Johns. 497; *Brown* v. *Hawkerson*, 3 Cow. 70; *Davy's Ex'r* v. *Faw*, 7 Cranch, 171; *Carey* v. *Wilson*, 6 N. H. Rep. 177.

But although it may in some instances be competent to show by parol evidence that matters are passed upon by arbitrators which are not included in the submission, or that those embraced in the submission are not all considered, yet that is not the point here. A bond was drawn embracing the submission. It was witnessed by the counsel of the

parties, as its inspection shows; and an award was made in pursuance of the submission, and reduced to writing upon the back of the bond itself; and the attempt is now made, not to contradict the bond, but to show by parol evidence what that submission was; what the bond means. The complainant does not, by his evidence or argument, directly attack the written submission, but endeavors to show by parol what was submitted. And this we are clear cannot be done; for it is a well established principle that the terms of a written agreement or contract, or any like instrument, cannot be enlarged or varied by parol evidence, but the court must pass upon it and construe its meaning as it is, unless it contains some latent ambiguity which by the rules of law may be explained by parol.

What, then, was submitted to these arbitrators to decide, and what does their award require? We have carefully considered this question, and have all of us compared our views in regard to it; and after the best examination and consideration that we have been able to give it, our conclusion is, that the submission and award amount to this and no more, viz. that Mrs. Chamberlain should receive the twenty-five dollars a year, not in lieu and discharge of her dower in the land, but in the nature of rent for its use.

The submission was not, to find how much she should be paid in full for her dower, or how much should be given her for her rights in the land, but to see what sum she should receive annually instead of having her dower assigned and taking possession of the same; and the bond which was given was for Furber's advantage, not hers. She preferred to have an annual sum for the use of the dower, instead of having it assigned, and being to the trouble of looking after it and carrying it on; Burleigh, to relieve himself from a suit upon his covenants, agreed to pay that sum; and so long as it was paid, she was bound to receive it. But this was not to be in full discharge of all her rights in the

Furber *v.* Chamberlain.

premises. Such is not the language of the submission, nor, as we think, the proper construction to be put upon it.

And the course which was pursued by the parties at the time is in perfect keeping with this view of the matter; for it can hardly be presumed that, had it been intended that the bond should be in full satisfaction of all claim to the land, the judgment for dower would not then have been discharged, or some release, or writing to that effect made.

Entertaining these views, it becomes unnecessary to examine the question whether, had the submission been as contended by the complainant, the award would have concluded the defendant's rights in the premises, without the execution of some written release or memorandum in writing signed by her. Rev. Stat. ch. 180, § 7. Were it necessary to investigate this question, it might, perhaps, be found, that a distinction should be made between a contingent and an uncertain right of dower, and one that had become fixed by the judgment of a court. It might be necessary, also, to inquire into the nature of the submission, and to what extent it could be binding so as to affect rights in real estate; the submission not being between the parties to this bill, nor between the parties whose rights were to be affected.

The orator complains that his remedy upon his covenants of warranty has become worthless in consequence of the present insolvency of Burleigh, and of the decease of his wife. But the hardship of the case, either way, cannot vary the construction to be put upon the written submission. If, however, that were to be considered, it appears to us that the insolvency of Burleigh would bear quite as severely upon an old lady, eighty-three years of age, as this defendant is said be, who had been induced to take an uncertain bond for certain and fixed rights in real estate, as upon the complainant, whose duty it was to look to his title and the solvency of his grantors when he took the deed from them.

But these are matters that cannot affect this decision. Our opinion is that the bond was not taken in full satisfac-

tion and discharge of all claim upon the land; and for aught that appears in the present case, the defendant has still her rights there, in default of payment of the twenty-five dollars a year. The bill must therefore be dismissed.